MARIE L. FABIANO & others[1] *vs.* CITY OF BOSTON & others.[2]

No. 98-P-1454.

Suffolk. January 7, 2000. - June 1, 2000.

Present: GREENBERG, KAPLAN, & RAPOZA, JJ.

*Historic Preservation. Boston Landmarks Commission. Zoning,* Validity of by-law or ordinance.°

Plaintiffs challenging a 1996 zoning amendment designating their properties in the Mission Hill district of Boston as purely residential did not demonstrate either an indiscriminate assignment of zoning classification that amounted to illicit "spot" zoning or that the purposes of the zoning amendment were not consonant with the purposes of the enabling act. [284-287]

CIVIL ACTION commenced in the Superior Court Department on June 10, 1996.

The case was heard by *John C. Cratsley,* J., on a motion for summary judgment.

*Marie L. Fabiano,* pro se.

*Charles S. Lew,* pro se.

*Edward J. Cotto,* pro se.

*Francis L. Fabiano,* pro se.

*Kabrina Krebel Chang* for the defendants.

KAPLAN, J. The pro se plaintiffs Marie L. and Francis L. Fabiano, Edward J. Cotto, and Charles S. Lew, own properties located, respectively, at 698, 700 and 702 Huntington Avenue, Boston. These places lie in the Mission Hill Triangle District (Triangle District), created by the Boston Landmarks Commission in 1985 to protect the historically significant row houses of the area.[3] The bounds of the Triangle District are Huntington

---

[1]Francis L. Fabiano, Edward J. Cotto, and Charles S. Lew.

[2]Boston Zoning Commission and Boston Redevelopment Authority.

[3]The commission was established by St. 1975, c. 772, which sets out its purposes and procedures.

Avenue (State Route 9) to the north, Tremont Street to the southwest, Worthington Street to the southeast, and Smith Street to the north. Wigglesworth Street bisects the area. (See map appended to this opinion.)

Before 1986, the plaintiffs' properties were zoned "B-1," which allowed some commercial uses (retail, business, and others). In 1986, the area was rezoned and the plaintiffs' properties were placed in an "H-2" zone (precluding non-residential uses). In 1988, with the formation of a Mission Hill Planning and Zoning Advisory Committee (PZAC) to help in planning what would become the Mission Hill Neighborhood District of Boston (Mission Hill District),[4] of which the Triangle District is a minor part, a process began which ended in 1996 with the rezoning of the whole Mission Hill District. One result within the smaller Triangle District was that the plaintiffs' properties, together with most of the rest of that district, were placed in zone "RH-Row House Residential" (only residential row house use). However, the difference between H-2 of 1986 and RH of 1996 was modest: RH permitted only rowhouses, H-2 was not so limited; both permitted only residential use.

To turn to the properties on Tremont Street in the Triangle District. These were zoned H-2 in 1986 like the plaintiffs' properties. In 1996 they were rezoned "MFR/LS" (multi-family residential/local service, a primarily residential designation but allowing a limited class of commercial establishments on the ground floor).

By the present action, the plaintiffs complain that the treatment accorded the Tremont Street properties in 1996, contrasting with the contemporaneous treatment of the plaintiffs' Huntington properties, amounts to illicit "spot" zoning brought about by discriminatory zoning designations. The plaintiffs say there is no essential difference in fact between the situations and circumstances of the two sets of row houses, yet the plaintiffs are not in terms allowed commercial uses while the owners on Tremont Street are permitted them. The plaintiffs pray the invalidation of the RH zoning of their properties.

After pleadings, the defendants city of Boston and Boston

---

[4]As established in 1996, the Mission Hill District extends west along Huntington Avenue from the Museum of Fine Arts, follows the border between Boston and Brookline, then runs in a southerly direction along Heath Street (behind the New England Baptist Hospital), then east on Columbus Avenue toward downtown Boston.

Redevelopment Authority moved for summary judgment upon a record containing the basic facts. A judge of the Superior Court allowed the motion with a memorandum of decision. The plaintiffs appeal.

We shall set out the procedures leading to the 1996 rezoning and then discuss the plaintiffs' claim.

1. In November, 1988, the defendant Boston Redevelopment Authority (BRA) began a study of the Mission Hill District with a view to possible rezoning. This inspired the creation of PZAC, consisting of residents and property owners appointed by the mayor of Boston, which among other things was to sound community sentiment. PZAC convened bi-monthly and met periodically with the BRA. Over a period of eight years PZAC developed the Mission Hill "Interim Planning Overlay District" (IPOD), to "establish[] temporary zoning controls for an area while a comprehensive planning and rezoning process is under way." Boston Zoning Code, art. 27. In 1995, PZAC arrived at a proposed zoning amendment of the Code.

PZAC recommended "CC" zoning, that is, community commercial uses for both the Huntington and Tremont sets of row houses, with residential zoning for the rest of the Triangle. On transmittal of PZAC's proposal to the BRA in accordance with § 3 of the City of Boston Enabling Act, St. 1956, c. 665, the BRA staff proposed several changes of the plan: a key change was the elimination of CC zoning in the Triangle District and the differing zoning assignments to the two locations at Huntington Avenue and Tremont Street already mentioned.[5]

In March, 1996, the BRA petitioned the Boston Zoning Commission (BZC) to adopt the plan with the proposed amendments, and on April 17, 1996, BZC held public hearings thereon.

As to the Triangle District, community support was strong for comprehensive residential zoning. BZC received a petition with ninety signatures of interested persons opposed to commercial zoning of any part of the Triangle. Of these, seventy-nine specifically petitioned for RH zoning of both the Huntington and Tremont properties in question. City councillors Tom Keane and Peggy Davis-Mullen as well as a number of Triangle District residents spoke for RH zoning. City councillor Richard

[5]The plaintiffs say the BRA changes were late attempts to satisfy insidious public pressure. It may be noted, however, that public input has been traditionally welcomed in the zoning process.

Iannella submitted a letter to the same effect. BZC also received a letter from Ellen Lipsey, executive director of the Boston Landmarks Commission, arguing for RH zoning for the Huntington properties and MFR-LS zoning for the Tremont properties. Seven persons, including the plaintiff Marie Fabiano and a member of her family, spoke in opposition to RH zoning.

BZC voted to amend the Boston Zoning Code to create the Mission Hill District (art. 59 and Map 6D). This divided the District into subdistricts, with RH zoning assigned to the entire Triangle except for MFR-LS zoning of 1605-1607 Tremont Street. As for the surrounding landscape, the parcels to the east and southeast of the Triangle are residential subdistricts, and southwest of the Triangle is a community commercial subdistrict. The parcel immediately east of the plaintiffs' houses on Huntington Avenue is a neighborhood shopping subdistrict; the parcels immediately west are community commercial.

The amendments for the Mission Hill District took effect on May 9, 1996, upon approval by the mayor.

2.[6] In their action commenced on June 10, 1996, under § 10A of the enabling act[7] (St. 1956, c. 665, as amended by St. 1987, c. 371, § 2), the plaintiffs say their Huntington Avenue row houses are indistinguishable from the row houses on Tremont

[6]In approaching the legal issue, it is worth observing for the sake of accuracy that over a long period of time two small business offices and an electrology office have established themselves on the street level of the Huntington row houses, as well as business stores on the street level of the Tremont row houses. These uses have continued despite the H-2 designations after 1986. There is no intention that we can see of record to question the continuance of the uses on the Huntington Avenue properties after 1996 despite the RH designation. The new post-1996 designation MFR/LS for the Tremont Street properties is in itself broad enough to authorize the business stores on the street level.

[7]Section 10A (added by St. 1987, c. 371, § 2) reads: "Any persons aggrieved by a decision of the zoning commission approving a zoning map amendment or a zoning regulation or amendment thereof, or by any procedural defect therein, or any municipal board or officer, may appeal such decision to the superior court in the county of Suffolk or to the land court; provided, however, that such appeal is filed in said court within thirty days after such decision became effective in accordance with the provisions of section three. Upon an appeal pursuant to this section, the court shall hear all pertinent evidence and determine the facts, and, upon the facts as so determined, annul such action if found to exceed the authority of such commission, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive; but the parties shall have all rights of appeal and exception as in other equity cases."

Street (and, for that matter, from the properties along Huntington Avenue not incorporated in the Triangle District that lie on either side of the plaintiffs' houses). One could characterize such allegedly discriminatory regulation as illegal "spot" zoning.[8] The zoning amendment, the plaintiffs go on to say, was adopted in disregard of factors that made their row houses suitable only for commercial rather than residential use — indeed, one might say more suitable for such use than the Tremont Street row houses.

Thus the plaintiffs argue: There is more traffic on Huntington Avenue (a State highway traversed by MBTA trolleys) than on Tremont Street, which is merely a local street. The plaintiffs' properties have no back and side yards; the Tremont Street properties have both. It is notable that the plaintiffs' properties were slated for commercial zoning in the PZAC proposal, which was not superseded until late in the game. The plaintiffs add the general observation that living conditions in their houses are badly impaired by the noise and air damage that are due to the traffic on Huntington Avenue.

The defendants respond: There are significant differences between the Huntington and Tremont locations and the plaintiffs are unable to show — and the burden is upon them to try to show — that the variant zoning was actuated by other than rational planning considerations. See *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594-595 (1949); *Collura* v. *Arlington*, 367 Mass. 881, 885 (1975).

The affidavit of Rick Shaklik, a senior planner/zoning administrator at BRA, points out that the exteriors of the plaintiffs' row houses are "architecturally intact and have been altered only in minor ways if at all since they were built, and retain their original residential appearance." Except for the small offices and Fabiano's electrology office (see note 6, *supra*), these row houses have been continuously and historically in residential use. In contrast, the Tremont Street row houses have a history of "mixed uses" with commercial uses predominating on the ground floor, and residential uses above. To like effect on the distinctions between the two locations is

---

[8]Defined as the "singling out of a particular parcel for different treatment from that of the surrounding area, producing, without rational planning objectives, zoning classifications that fail to treat like properties in a uniform manner." *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 312 (1990).

Ellen Lipsey of the Boston Landmarks Commission. Photographs of the Huntington and Tremont row houses reflect the points made by Shaklik and Lipsey. The Tremont pictures show the alterations of the facades to accommodate the business uses at ground level.

We conclude on the whole that the record shows, not an indiscriminate assignment of different zoning classifications, see *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 312 (1990), but calculated efforts by public authorities, with much support by the citizenry, to preserve within reason the historic residential character of the Triangle. This is a goal surely within the purview of the enabling act. See *Opinion of the Justices*, 333 Mass. 773, 780 (1955) ("There has been substantial recognition by the courts of the public interest in the preservation of historic buildings, places and districts").

We reject the plaintiffs' contention (made on appeal, although not below) that the preservation of historic architecture is not a permissible factor in zoning. The plaintiffs say the Legislature intended no connection or relation between BZC and the Boston Landmarks Commission, but it may be enough to say that in fact the Commission is a division of BRA, see St. 1975, c. 772, § 3, which, as noted, makes recommendations on zoning proposals to BZC. See St. 1956, c. 665, § 3.

So also the plaintiffs seem to be saying that the amendment was motivated solely by aesthetic considerations and these cannot justify a zoning regulation. There is increased recognition in later years in this Commonwealth of the propriety and even the importance of aesthetic factors in city planning. See *Opinion of the Justices*, 333 Mass. at 779; *Donnelly & Sons, Inc.* v. *Outdoor Advertising Bd.*, 369 Mass. 206, 217-218, 220-221 (1975). At all events, aesthetic ideas were not the sole guides in shaping the amendment. Rather we can perceive a concern over time that business and retail uses should not overwhelm the long-standing intrinsic residential nature of the Triangle.

It does not put in question the validity of the amendment that the owners of the Tremont houses may be benefited financially by it, while the plaintiffs may be deprived of some uses of their houses possibly assessible in dollars. See *Raymond* v. *Building Insp. of Brimfield*, 3 Mass. App. Ct. 38, 42 nn.3 & 4 (1975). What counts is whether the purposes of the amendment are consonant with the objectives of the enabling act. See *Caires* v. *Building Commr. of Hingham*, 323 Mass. at 593-594.

It is hardly necessary to add that, as the zoning amendment was a legislative act, it is supported by a strong presumption of validity.[9]

> "Every presumption is to be afforded in favor of the validity of [a zoning] ordinance and if its reasonableness is fairly debatable the judgment of the local authorities who gave it its being will prevail. [Citations omitted.] It will be sustained unless there exists no substantial relation between it and the expressed purposes of the statute. Conversely, it will be held invalid if it be arbitrary or unreasonable, or substantially unrelated to the public health, safety, convenience, morals or welfare."

*Schertzer* v. *Somerville*, 345 Mass. 747, 751 (1963).[10]

*Judgment affirmed.*

---

[9]The plaintiffs suggest that § 10A (note 7, *supra*) disclaims a presumption. That facts pertinent to particular cases brought under § 10A may be subject to review does not abrogate the presumption. Compare *McHugh* v. *Board of Zoning Adjustment of Boston*, 336 Mass. 682, 687-690 (1958); *Elmer* v. *Board of Zoning Adjustment of Boston*, 343 Mass. 24, 35 (1961).

[10]Perhaps recognizing the frailty of their attack on the 1996 amendment, the plaintiffs attempt, after ten years of inaction, an attack on the 1986 amendment. As the thirty-day provision of St. 1956, c. 665, was not adopted until 1987, we may choose to assume, without deciding, that the claim is not outlawed by lapse of time. Without elaboration, we can say that the claim fails for the reason, if no other, that the Huntington and Tremont properties were given the same designation H-2, not variant designations, in 1986.

The plaintiffs' further vague contention that their properties should have been zoned commercially as were other properties on Hungtington Avenue fails for want of proof on this record of the supposed similarities in the properties all along the line.

Fabiano *v.* City of Boston.

APPENDIX.

1 MFR—LS (Multi—Family Residential / Local Service)
2 RH (Rowhouse Residential)
3 NS (Neighborhood Shopping)
4 CC (Community Commercial)
5 MFR (Multi—Family Residential).