TIMOTHY K. HANNA vs. TOWN OF FRAMINGHAM & another.[1]

No. 02-P-1330.

Suffolk. December 10, 2003. - February 11, 2004.

Present: GREENBERG, GRASSO, & GREEN, JJ.

*Zoning,* Appeal, Parties, Person aggrieved, Contract zoning, Spot zoning, Zoning district. *Practice, Civil,* Standing, Zoning appeal, Parties.

The plaintiff in a zoning dispute had standing, at least for purposes of summary judgment, to challenge an amendment to a zoning map which placed certain land owned by the Massachusetts Turnpike Authority and fronting Route 9 within a light manufacturing district, where there was evidence that the plaintiff's property would be significantly negatively impacted by increased traffic resulting from the development of the land as proposed [422-424], and where the plaintiff, by virtue of holding an unforeclosed right of redemption in the fee interest in a parcel of land taken for unpaid taxes, and being in possession of such land at the time of the zoning dispute, qualified as an "owner of a freehold estate in possession in land" within the meaning of G. L. c. 240, § 14A [424-425].

A town's enactment of a zoning map amendment triggering the effectiveness of a development covenant concerning certain property which would allow for needed traffic mitigation measures, allow the orderly development of the property for uses compatible with its surrounding commercial area, fund the town's acquisition of open space, generate tax revenues, and create jobs constituted a valid exercise of the town's zoning police power and did not violate the uniformity requirement of G. L. c. 40A, § 4. [426-427]

CIVIL ACTION commenced in the Land Court Department on November 2, 2000.

The case was heard by *Karyn F. Scheier,* J., on a motion for summary judgment.

*Michael A. Laurano* for the plaintiff.

*Martin R. Healy* for Boston Properties, Inc.

*Christopher J. Petrini* for town of Framingham.

GREEN, J. Acting on the defendants' joint motion for summary

[1]Boston Properties, Inc.

judgment, a judge of the Land Court ordered entry of a judgment declaring valid an amendment to the Framingham zoning map which placed certain land (the locus), owned by the Massachusetts Turnpike Authority (authority) and fronting on Route 9, within a light manufacturing district.[2] In cross appeals, (i) the plaintiff challenges the map amendment as illegal "contract zoning" and "spot zoning"[3]; and (ii) the defendants challenge the plaintiff's standing to bring his complaint under G. L. c. 240, § 14A. We affirm the judgment.

*Background.* In 1998, the defendant Boston Properties, Inc., entered into an agreement with the authority to develop a portion of the locus for office, retail, and hotel use. At the time of that agreement, the locus was not within any zoning district and was not subject to the provisions of the Framingham zoning by-law.[4] The area surrounding the locus was zoned for light manufacturing use. A proposed article to amend the zoning map to include the locus within a light manufacturing district was placed before the Framingham town meeting on May 11, 1999, but was referred back to its sponsors without a vote, based on concerns expressed by some members of the town meeting and by the chair of the planning board. Following discussions with various town boards and committees on the subject of traffic mitigation along the Route 9 corridor, and the town's need to preserve open space, Boston Properties executed a development covenant in favor of the town under which it agreed (contingent on passage of an amendment placing the locus in a light manufacturing district) to perform and fund various traffic mitigation measures along Route 9, and to contribute $350,000 to the town to help fund the purchase of open space. The 2000

---

[2]The motion judge also allowed a motion to dismiss the authority, which had been named a party defendant in the complaint. That dismissal was not appealed.

[3]Except to introduce the plaintiff's challenge, we decline to employ the labels assigned by the plaintiff to analyze the validity of the map amendment. See *Durand* v. *IDC Bellingham, Inc.,* 440 Mass. 45, 54 n.17 (2003); *National Amusements, Inc.* v. *Boston,* 29 Mass. App. Ct. 305, 313 n.7 (1990).

[4]The locus was unzoned because it historically had been owned by the authority, and accordingly would have been exempt from zoning while held for turnpike use even if placed within a designated zoning district. See *Village on the Hill, Inc.* v. *Massachusetts Turnpike Authy.,* 348 Mass. 107, 118, cert. denied, 380 U.S. 955 (1964).

annual town meeting approved a warrant article amending the zoning map to place the locus in a light manufacturing zone. We describe additional facts below as pertinent to our discussion of the issues.

*Standing.* Because the plaintiff's standing is an essential prerequisite to judicial review, see *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. 680, 681 n.2 (2002), we consider the parties' competing claims on that subject first.[5]

General Laws c. 240, § 14A, authorizes

> "[t]he owner of a freehold estate in possession in land [to] bring a petition in the land court against a city or town wherein such land is situated . . . for determination of the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A . . . which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land . . . or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement, or development of such land . . . ."

A landowner may bring an action under § 14A for determination of the validity of a zoning enactment regulating land owned by another, if the use of such other land pursuant to the zoning amendment "directly and adversely affects the permitted use of his land." *Mastriani* v. *Building Inspector of Monson*, 19 Mass. App. Ct. 989, 990 (1985), citing *Harrison* v. *Braintree*, 355 Mass. 651, 654-655 (1969).

The record describes three parcels in which the plaintiff holds an interest. Mindful that G. L. c. 240, § 14A, is to be given a "broad construction," *Harrison* v. *Braintree, supra* at 654, we conclude for the reasons below that the record is sufficient to support the plaintiff's standing, at least for purposes of sum-

---

[5]The complaint by its nature sought a declaratory judgment. Accordingly, though we determine the case adversely to the plaintiff, the question of standing determines whether the appropriate judgment is one of dismissal or one declaring the validity of the amendment. See *Connery* v. *Commissioner of Correction*, 33 Mass. App. Ct. 253, 254 n.4 (1992). Compare *McLean Hosp. Corp.* v. *Belmont*, 56 Mass. App. Ct. 540, 540 n.2 (2002) (standing assumed, where parties did not dispute it).

mary judgment, based on his interest in the parcel located at 1832 Worcester Road.[6]

To support his opposition to the defendants' summary judgment motion, the plaintiff submitted an affidavit of a traffic engineer, asserting that the plaintiff's property at 1832 Worcester Road "will be significantly negatively impacted" by development of the locus as proposed by the defendant Boston Properties. Concerns over increased traffic are within the scope of the zoning laws, and accordingly may be used to support standing. See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 722 (1996); *Nickerson* v. *Zoning Bd. of Appeals of Raynham, supra* at 682 n.3; *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 376-377 (1988). Unlike an appeal from an administrative zoning decision under G. L. c. 40A, § 17, a plaintiff challenging the validity of a zoning enactment under G. L. c. 240, § 14A, need not demonstrate that he will suffer an injury that is special and different from that experienced by the general community. See *Van Renselaar* v. *Springfield*, 58 Mass. App. Ct. 104, 107 (2003).[7] But see *Durand* v. *IDC Bellingham, Inc.*, 440 Mass. 45, 61 (2003) (Spina, J., concurring). On the summary judgment record, the plaintiff has presented sufficient

---

[6]The other two parcels are located at 153 Prospect Street and 1672 Worcester Road. The parcel at 153 Prospect Street is more than four miles from the locus, and the parties do not challenge the conclusion of the motion judge that the plaintiff cannot support standing with that parcel. The parcel at 1672 Worcester Road was taken by eminent domain in 1994 by the authority. Though the plaintiff's pending challenge to the taking award included a challenge to the validity of the taking, see *HTA Ltd. Partnership* v. *Massachusetts Turnpike Authy.*, 51 Mass. App. Ct. 449 (2001), both title and possession of the property were in the authority at the time of the plaintiff's complaint.

[7]As articulated in *Harvard Square Legal Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 492-493 (1989), the requirement that a private § 17 appellant demonstrate an injury that is special and different from the concerns of the general community derives from the delegation of administrative authority to local bodies under the Zoning Act, and the associated administrative review of a particular project submitted for approval. From that administrative process, § 17 authorizes certain municipal boards and officials, together with a limited class of "persons aggrieved," to seek judicial review of an administrative zoning decision. The legislative enactment of a zoning amendment involves no comparable delegation to administrative process, and § 14A permits any owner of land affected by the enactment to seek a determination of its validity and effect on his land. Though, as discussed *infra*, we extend considerable deference to an enactment of a legislative body, such deference finds expression in our review of the validity of the enactment

evidence to create a triable issue of fact on his claim that he will suffer an adverse effect on his ability to use the property at 1832 Worcester Road as a result of the map amendment.[8]

The defendants also contend that, because the town in 1992 took the 1832 Worcester Road property for unpaid taxes and the plaintiff's title remains unredeemed, the plaintiff is not the "owner of a freehold estate in possession in land" and is consequently without standing under § 14A.

Under G. L. c. 60, § 54, title to land taken for unpaid taxes vests in the town as of the date of the taking, upon the town's filing of an instrument of tax taking in the applicable registry of deeds within sixty days of the date of the taking. Such title is thereafter "held as security for the repayment of said taxes with all intervening costs, terms imposed for redemption and charges, with interest thereon." *Ibid.*

The town's title under an instrument of tax taking is, however, subject to redemption by any person having an interest in the land, as provided in G. L. c. 60, § 62, at any time prior to entry of a decree of foreclosure. Though the town may enter into possession of the property under such a tax title, and may thereafter collect any rents (net of operating expenses) generated by the property until redemption, see G. L. c. 60, § 53, the town in the

itself, rather than in determination of who among the persons affected by it may seek such review.

[8]We find unpersuasive the defendants' suggestion that the plaintiff cannot attribute any adverse effects on 1832 Worcester Road to the map amendment, a fortiori, because the map amendment subjected unzoned (and hence unregulated) land to more restrictive regulation. As acknowledged by Boston Properties at oral argument, it sought the map amendment (and entered into the development covenant in favor of the town) to ensure that it could proceed with its proposed project without concern that the town would impose even more restrictive zoning before it could prosecute its proposed development.

We are similarly unpersuaded by the suggestion that the impact of increased traffic on the plaintiff's land is lessened because the plaintiff has no definite present plans to use the land for a purpose more dependent on adequate access than in its present, relatively undeveloped, state. A significant increase in traffic will affect the uses to which the property may be put, whenever the plaintiff should determine to proceed with a more intensive use, and the plaintiff should not be barred from preserving the range of viable options available to him simply because he has no present plans to proceed with a particular identified use.

present case has not taken possession of the property, and has not obtained a decree under G. L. c. 60, §§ 65-69, foreclosing the plaintiff's right of redemption.

The plaintiff argues that the town's interest under an instrument of tax title is, prior to entry of a decree of foreclosure, analogous to the interest of the holder of a mortgage in Massachusetts.[9] Cf. *Dolliver* v. *St. Joseph Fire & Marine Ins. Co.*, 128 Mass. 315, 316 (1880) ("as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands, at least till the mortgagee has entered for possession"). The analogy is not perfect. For example, unlike a mortgagee a town becomes liable upon acquisition of a tax title for certain expenses, such as condominium common area charges, pursuant to G. L. c. 60, § 77. See *Milford* v. *Boyd*, 434 Mass. 754, 759 (2001). Furthermore, the town's lien securing payment of real estate taxes arises automatically, and thus exists prior to (and independent of) the town's acquisition of its record tax title under the instrument of taking. See G. L. c. 60, § 37. However, prior to foreclosure of the right of redemption, taxes continue to accrue against the assessed owner. See G. L. c. 60, § 61. The town generally is exempt from liability for injury to third parties even if it takes possession of land held under a tax title. See G. L. c. 60, § 53, third par.[10] Moreover, "[t]he purpose of the [tax title and foreclosure] provisions [of G. L. c. 60] is not to provide municipalities with a method of acquiring property for municipal purposes . . . the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property, together with other costs and interest." *Lynnfield* v. *Owners Unknown*, 397 Mass. 470, 474 (1986). On balance, we conclude that the plaintiff, holding an unforeclosed right of redemption in the fee interest in land taken for unpaid taxes, and still in possession of such land, qualifies as an "owner of a freehold estate in possession in land" within the meaning of G. L. c. 240, § 14A.

---

[9]In Massachusetts, a so-called "title theory" state, a mortgagee holds legal title to the mortgaged property, subject to the mortgagor's equity of redemption. See *Atlantic Sav. Bank* v. *Metropolitan Bank & Trust Co.*, 9 Mass. App. Ct. 286, 288 (1980).

[10]*Kurtigian* v. *Worcester*, 348 Mass. 284 (1965), preceded the enactment of the second and third paragraphs of § 53.

*Validity of map amendment.* The parties' briefs, filed before issuance of *Durand* v. *IDC Bellingham, supra,* devote considerable discussion to the question whether the provisions of the development covenant constitute "extraneous consideration" given to induce the vote of the 2000 town meeting adopting the map amendment. *Durand* renders that discussion largely inapposite; instead, we consider whether the map amendment "violates State law or constitutional provisions, is arbitrary or unreasonable, or is substantially unrelated to the public health, safety, or general welfare." *Id.* at 57.[11] In so doing, we afford considerable deference to the determination by the legislative body (in this case the town meeting): "[i]f the reasonableness of a zoning bylaw is even 'fairly debatable, the judgment of the local legislative body responsible for the enactment must be sustained.' " *Id.* at 51, quoting from *Crall* v. *Leominster,* 362 Mass. 95, 101 (1972). We undertake no inquiry into the possible motives of the legislative body. *Durand, supra* at 51, and cases cited. See *Knowles* v. *Codex Corp.,* 12 Mass. App. Ct. 493, 498 (1981).

Against that standard, we have no difficulty concluding that the motion judge correctly determined that the materials submitted by the defendants in support of their joint motion for summary judgment established that the plaintiff had no reasonable expectation that he would be able to meet his burden of proof at trial. See *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 709 (1991). The map amendment places the locus within the same zoning district as all of the land surrounding it; there is accordingly no rational basis on which the plaintiff may contend that the map amendment violates the uniformity requirement of G. L. c. 40A, § 4. The map amendment allows the orderly development of the locus for uses compatible with its

[11]The plaintiff's suggestion, advanced in a letter submitted pursuant to Mass. R.A.P. 16(l), 386 Mass. 1247 (1982), that the present case may be distinguished from *Durand* because the consideration furnished by the developer in that case was a voluntary gift, is misplaced. Though the provisions of the development covenant in the present case were the product of negotiation, the constitutional limitations on the voluntariness of such consideration are based in the just compensation clause of the Fifth Amendment to the United States Constitution. See *Durand, supra* at 55 n.18. Boston Properties has asserted no claim under that clause, and the plaintiff is without standing to assert one. *Ibid.*

surrounding commercial area. By triggering the effectiveness of the development covenant, the map amendment furnished and funded needed traffic mitigation measures along the congested route 9 corridor and provided funds for the town's acquisition of open space. The motion judge also observed that the proposed development of the locus for hotel, office, and retail uses pursuant to the map amendment would generate approximately $1.7 million in annual tax revenues, and create up to 1,500 jobs. While reasonable minds may differ, it cannot be said that the benefits of the map amendment, and the projects it authorizes and regulates, are substantially unrelated to the public health, safety, or general welfare, or that the reasonableness of the amendment is not fairly debatable. The enactment of the map amendment constituted a valid exercise of the zoning police power granted to the town under the Home Rule Amendment. The motion judge accordingly was correct to direct entry of a judgment declaring the map amendment to be valid.

*Judgment affirmed.*