LEIGH F. ANDREWS & another[1] *vs.* TOWN OF AMHERST.

No. 05-P-1824.

Suffolk. October 16, 2006. - March 5, 2007.

Present: PERRETTA, DUFFLY, & DOERFER, JJ.

*Zoning,* Amendment of by-law or ordinance, Validity, Spot zoning.

Discussion of the law relating to the authority of a municipality to establish the boundaries of its zoning districts in which the uses of land are restricted. [367-369]

A Land Court judge erred in ruling that a zoning amendment enacted at an annual town meeting, which rezoned a substantial portion of the plaintiffs' land from a light industrial zone to a flood conservancy zone, was null and void, where the plaintiffs did not present evidence sufficient to sustain their heavy burden of showing that the amendment was arbitrary and unreasonable, or substantially unrelated to the public health, safety, morals, or general welfare. [369-376]

CIVIL ACTION commenced in the Land Court Department on July 1, 2002.

The case was heard by *Charles W. Trombly,* J.

*Alan Seewald,* Town Counsel, for the defendant.

*Gregor I. McGregor* (*Nathaniel Stevens* with him) for the plaintiffs.

DOERFER, J. A substantial portion of the plaintiffs' land (locus) in the town of Amherst (town) was rezoned from a light industrial zone to a flood prone conservancy (FPC) zone. A Land Court judge agreed with the plaintiffs' position that the action of the town constituted reverse spot zoning and therefore was null and void. We conclude that the plaintiffs did not present evidence sufficient to sustain their heavy burden to overcome the legitimacy of the town's action, and we reverse.

We first describe the locus in question, which was rezoned,

[1]Donald A. Laverdiere.

and the surrounding area, which was not. We next review the law relating to the authority of the town to establish the boundaries of its zoning districts in which the uses of land are restricted. We review the limitations on that authority imposed by our zoning statutes and the State Constitution. We conclude that those limitations did not operate to invalidate the action of the town in this case.

*The locus.* The locus is vacant land containing approximately twenty acres. While the locus currently is not farmed, it historically was used for agricultural purposes. Most of the land surrounding it is actively used farmland. It is bordered on the east by Route 116 which, as found by the judge, "provides a barrier between [the] locus and more intensive land uses to the east."

The locus is crossed by Mill River, Swamp Brook, and a drainage swale. Parts of the locus (although not all of the part rezoned) have been subject to seasonal flooding. When Hurricane Floyd visited in 1999, there was serious flooding of the locus and the entire area around the locus, except for an area on the westerly side of the locus and an area in the southwesterly corner of the locus.[2]

*Relevant zoning.* Section 3.223 of the town's zoning by-law (by-law) defined the FPC district as follows:

> "those geographical areas hereinafter delineated which by virtue of their relationship to components of the natural hydrology of the Town of Amherst, have substantial importance to the protection of life and property against the hazards of floods, erosion, and pollution, and in general are essential to the public health, safety, and welfare. Those geographical areas include flood prone areas, natural water storage areas adjacent to ponds, rivers, streams and wetlands as well as reservoirs."

Sections 3.2231 and 3.2232 of the by-law define the FPC district as including "all land within a minimum of 75 feet horizontally of the crest of the bank of the Mill River," and "[a]ll land within a minimum of 50 feet horizontally of the crest of the bank of . . . Swamp Brook." Thus, prior to the

---

[2]These areas of the locus were not rezoned as part of the FPC district revision.

rezoning, the strips of land on the locus within seventy-five feet of the bank of the Mill River and within fifty feet of Swamp Brook were included in the FPC district under the authority of these provisions of the by-law.

*The rezoning decision.* In 2002, a citizen's petition for rezoning a significant additional portion of the locus to an FPC district was presented and approved at town meeting.[3] This overlay zone limited development of the land.[4] This action subsequently was challenged in a complaint, before the Land Court, alleging that the zoning map change violated the plaintiffs' Federal and State constitutional rights, violated the Zoning Act (G. L. c. 40A), was unlawful spot zoning, and was null and void as the map change was based upon unreliable documentation and did not amend the text of the by-law, and that the FPC district violated the uniformity requirement of the Zoning Act. After a six-day bench trial, the judge ruled in favor of the plaintiffs, finding in essence that the amendment was invalid on the grounds that it constituted spot zoning and conflicted with the Zoning Act by improperly singling out the locus for more restrictive zoning than its surrounding area without a rational basis in any legitimate objective of the Zoning Act. The judge agreed with the town that the motives of the amendment's supporters and the information upon which town meeting based its actions and its vote may not be examined in determining the validity of the action taken, although a judge could look into and determine the validity of the amendment itself.[5]

*Limits on power of the town to establish zoning districts.* In general, a municipality is given broad authority to establish zoning districts regulating the use and improvement of the land within its borders. See, e.g., *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 359 (1973) (holding

[3]The town operates under a representative town meeting form of government, whereby town meeting members are elected by district to attend and vote at town meeting.

[4]See note 14, *infra.*

[5]The judge further concluded that there was no regulatory taking, as placing the locus in an FPC district was an invalid, though well-intentioned, exercise of the town's police power. The plaintiffs have not cross-appealed this ruling or the judgment.

that "the zoning power is one of a . . . town's independent municipal powers included in art. 89, § 6's broad grant of powers to adopt ordinances or by-laws for the protection of the public health, safety, and general welfare"). See also *Durand* v. *IDC Bellingham, LLC*, 440 Mass. 45, 50 (2003) (*Durand*); *W. R. Grace & Co.-Conn.* v. *City Council of Cambridge*, 56 Mass. App. Ct. 559, 567 (2002) (*W. R. Grace & Co.-Conn.*). The exercise of broad legislative powers granted to municipalities under the Home Rule Amendment (art. 89 of the Amendments to the Massachusetts Constitution) is limited by whether the enactment violated State law or any other constitutional protections. See *Durand, supra* at 53-55 (no statutory violation where a town followed the procedure for amending a municipal zoning ordinance set forth in G. L. c. 40A); *Van Renselaar* v. *Springfield*, 58 Mass. App. Ct. 104, 108 (2003), quoting from *Rando* v. *North Attleborough*, 44 Mass. App. Ct. 603, 606 (1998) (spot zoning "violates the uniformity requirements of G. L. c. 40A, § 4, and 'constitutes a denial of equal protection under the law guaranteed by the State and Federal Constitutions' "). The touchstone is whether the enactment falls within the broad police powers of a town to promote the public good and safety. See *Durand, supra* at 52 (reviewing whether the amendment "was an arbitrary or unreasonable exercise of police power having no substantial relationship to the public health, safety, or general welfare"); *W. R. Grace & Co.-Conn., supra* at 565 (viewing the police power and spot zoning arguments "as raising essentially a single issue, i.e., whether the amendments were a legitimate exercise of the city's authority under the Zoning Act").

A court should not invalidate a legislative decision of a town based upon the alleged motive the town had in enacting the legislation. See *Durand*, 440 Mass. at 51, 57 (deferring to the legislative findings and choices of the local legislative body without regard to motive). If the action is otherwise justified, the actual reason for the enactment, not to mention the motivation of the sponsors of the action, is not relevant. See *W. R. Grace & Co.-Conn.*, 56 Mass. App. Ct. at 568 ("validity of the zoning amendments does not turn on the motives of their supporters"); *Hanna* v. *Framingham*, 60 Mass. App. Ct. 420, 426

(2004) ("We undertake no inquiry into the possible motives of the legislative body").

*Burden of proof.* The party challenging an amendment as spot zoning has the heavy burden of showing that it conflicts with the enabling act. See *W. R. Grace & Co.-Conn.*, 56 Mass. App. Ct. at 566-567. "[C]haracterizing 'a challenger's burden as one of proof beyond reasonable doubt may not be instructive. A better characterization is that the challenger must prove by a preponderance of the evidence that the zoning regulation is arbitrary and unreasonable, or substantially unrelated to the public health, safety, morals, or general welfare.' *Johnson* v. *Edgartown*, 425 Mass. 117, 121 (1997)." *Van Renselaar* v. *Springfield*, 58 Mass. App. Ct. at 108 (*Van Renselaar*). The applicable principles are of judicial deference and restraint, not abdication. See *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 309 (1990). However, as an action of the local legislative body, the zoning amendment is entitled to every presumption in its favor, and the reviewing court should not substitute its own judgment. See *Van Renselaar, supra.* If the reasonableness of the amendment is even "fairly debatable," it will be upheld. See *Crall* v. *Leominster*, 362 Mass. 95, 103 (1972); *W. R. Grace & Co.-Conn., supra* at 566; *Van Renselaar, supra.*

*Spot zoning.* To succeed in a challenge to a zoning enactment on the grounds of spot zoning or, in this case, reverse spot zoning,[6] the plaintiffs must show that the affected parcel has been singled out for more restrictive treatment than surrounding land which is indistinguishable, thereby "producing, without rational planning objectives, zoning classifications that fail to treat like properties in a uniform manner." *W. R. Grace & Co.-Conn.*, 56 Mass. App. Ct. at 570, quoting from *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 312. The parcel of land at issue here differs from the majority of the surrounding area because it is traversed by waterways, which previously had been designated

---

[6]See *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 313 n.7 ("The jargon phrase for unlawful singling out of a parcel for different zoning is 'spot zoning.' We have avoided using the phrase [in this case], in part because 13.8 acres constitutes a very large 'spot.' The size of the spot, however, does not determine whether unlawful zoning has occurred").

within the FPC district and were important considerations in flood control regulations. See *Van Renselaar*, 58 Mass. App. Ct. at 106, 109 (considering, among other circumstances, the characteristics of the locus). Furthermore, the underlying zoning districts differ. Thus, it could be said that in revising the FPC district line, the town did not commit spot zoning as it did not treat *similar* properties differently. See *Fabiano* v. *Boston*, 49 Mass. App. Ct. 281, 287 n.10 (2000) (noting insufficient evidence in the record of supposed similarities in the properties).

*Justification for zoning FPC on the locus but not nearby land.* The zoning change is criticized on the grounds that it was overinclusive, i.e., that it included portions of the locus that did not fit the general criteria for an FPC district as defined in the by-law. Also, it is challenged as underinclusive in that it did not include surrounding land that was equally prone to flooding.

First it must be observed that, under the by-law, a flood prone area is not limited to fifty or seventy-five feet from a particular watercourse. The by-law, in §§ 3.2231, 3.2232, and 3.2233, only says that such areas extend "a minimum" of fifty or seventy-five feet on either side of those watercourses, with the minimum footage dependent upon the specific watercourse. The plain language of the by-law requires a *minimum*, not a maximum, area designated as FPC. See *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 290 (1981) ("Specific provisions of a zoning enactment are to be read in the context of the law as a whole, giving the language its common and approved meaning . . ."). Thus the action of the town was authorized by the by-law.

It is true, as noted by the judge, that, after rezoning, the locus became the only parcel of land in an FPC district that extended farther than fifty or seventy-five feet on each side of the watercourses. The question then becomes whether there was a rational basis to extend the zone so far from the watercourses. See *Sturges* v. *Chilmark*, 380 Mass. 246, 259 (1980) (burden on the town only to make a prima facie showing of a rational reason for its action). See also *Johnson* v. *Edgartown*, 425 Mass. at 121; *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 356, 362 n.17 (2001). We note that a town is given great latitude in making decisions about the extent of areas to be burdened with

zoning restrictions. See *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 229 (1964); *Johnson* v. *Edgartown, supra* at 124 (town's evidence "was sufficient to meet its burden of going forward with a demonstration of why three-acre zoning . . . is rational and related to the public welfare"). It is sufficient to observe that on at least one occasion, i.e., Hurricane Floyd, the area included in the revised FPC district largely had been subjected to flooding. Thus, where a large portion of the locus had been flooded, it was not irrational to include more of the locus as a flood prone area than the minimum specified in the by-law for land traversed by a watercourse. See *Grenier* v. *Zoning Bd. of Appeals of Chatham*, 62 Mass. App. Ct. 62, 69 (2004), *S.C., Gove* v. *Zoning Bd. of Appeals of Chatham*, 444 Mass. 754 (2005). Other evidence in the record supported the inference that the parcel could be rationally included in an FPC district. For example, the judge found that a culvert that drains water from the Mill River under Route 116 has become blocked by an accumulation of silt. The existence of the drainage swale and waterways traversing the locus also could be considered in determining whether the locus was prone to flooding, according to § 3.223 of the by-law. There was no need to show that every square foot of the parcel was subject to flooding.[7] "[T]he evidence could be 'reasonably found sufficient to constitute' a basis for concern about flooding." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 488 (1979). See *Grenier* v. *Zoning Bd. of Appeals of Chatham*, 62 Mass. App. Ct. at 68-69. The town had the discretion to make reasonable categorical decisions, see *Subaru of New England, Inc.* v. *Board of Appeals of Canton, supra* at 487-488 (holding that it is "the board's

---

[7] It is true that the record focuses on the 1999 flood and the evidence that supports those observations (photographs, affidavits of eyewitness observations, land surveyor's maps of flooding, and so forth) and that there is not much evidence of flooding at other times. The dearth of additional evidence relating to other flooding does not make irrational the decision of the town to expand the FPC district on the locus. We do not agree that only lands that are subject to "seasonal or periodic flooding" properly may be included in an FPC district in order to comply with the by-law. Although that is one listed purpose of having land zoned as FPC, § 3.2221 of the by-law goes on to state that a purpose of the FPC district is to protect against the "hazards of flood inundation by assuring the continuation of natural flow patterns and the maintenance of adequate floodwater storage capacity."

evaluation of the seriousness of the problem, not the judge's, which is controlling"), and did so in this case. See *id.* at 487 ("the board . . . may take into account the purposes of the flood plain regulations and the effect of the proposal on all of the land in the flood plain district, . . . as well as on the locus and its particular occupants").

On the issue of underinclusiveness, surrounding land was not included in the citizen's petition on the grounds that much of it was already subject to an agricultural preservation restriction (APR) (which remain on the land permanently) and thus largely unbuildable already.[8] In addition to being subject to the APRs, the properties surrounding the locus are zoned residential low-density (R-LD),[9] but are also within a farmland conservation overlay district[10] that further restricts the use of those properties to agricultural purposes.[11] In other words, the kinds of restrictions on the use of the land that would be imposed by an FPC designation already were largely in place on neighboring land because of the APR and the farmland conservancy restrictions.[12] Although the underlying zoning labels may differ, the clas-

---

[8]Under an APR, existing dwelling structures are excepted from the restriction, and only structures used for agricultural purposes, including structures for housing seasonal agricultural employees, may be erected on the restricted land, and only with the consent of the Commonwealth. Other than for agricultural purposes, no other use or development of the premises is permitted as the intent of the APR is "the perpetual protection and preservation of agricultural lands."

[9]Section 2.01 of the by-law states that "[t]he purpose of the R-LD District is to provide for residential areas that allow limited development, while providing protection for environmentally sensitive areas, agricultural resources, and other similar lands. To this end, this is the lowest density residential district."

[10]Section 2.05 of the by-law states that "[t]he [farmland conservation] District is an overlay district, configured to include, and intended to protect those lands which, by virtue of their soils, acreage, location adjacent to and contiguous with other farm land, and lack of protection under existing underlying zoning, comprise the critical farmland of the Town of Amherst." Section 3.28 of the by-law also discusses farmland conservation districts.

[11]The one exception is a parcel to the north of the plaintiffs' land that contains an auction barn and is zoned as light industrial with a portion along the watercourses zoned as FPC. See discussion, *infra.*

[12]The only uses that might be permitted on the neighboring land (zoned as R-LD with the APR and the farmland conservation overlay) but not on the FPC-zoned locus are a structure for housing seasonal agricultural employees and a commercial greenhouse. While a commercial greenhouse may be allowed with a special permit in an R-LD district, it is unclear whether the APR

sifications permissibly result in consistent and similar land uses (or prohibitions). See *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 306-307 (locus was surrounded by active commercial use consisting of various zoning classifications, including local business, general business, general manufacturing, light manufacturing and also a single residence district).

As evidence of further underinclusiveness, the plaintiffs point to a structure known as the auction barn parcel (located to the north of the locus), which was zoned similarly to the locus prior to the amendment, but remained unchanged. However, the land use history of the auction barn parcel differentiates that parcel from the locus and from the surrounding farmland. See *Van Renselaar*, 58 Mass. App. Ct. at 106, 109 (considering adjacent land uses). The auction barn parcel is the only parcel in the northwest section of the town, west of Route 116, that has an active, nonagricultural commercial structure on it. As the auction barn parcel already was developed for nonagricultural use, any such rezoning would have created a nonconforming use of the structure. The town was under no obligation to rezone that parcel.

Furthermore, the locus was not singled out for more restrictive treatment from the surrounding land. Compare *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 311-312 (where the land surrounding the locus was consistently commercial and industrial, the zoning amendment arbitrarily changed the locus to a multi-family dwelling for the purpose of deterring economic competition, which is not a proper land use consideration).[13] A court looks at the actual practical uses to which the surrounding land lawfully can be put and not solely

---

or the farmland conservation overlay district would permit such a structure.

[13]The plaintiffs claim that, as in *National Amusements, Inc.* v. *Boston, supra* at 310, the zoning amendment here was not the result of any land use planning process or other studies initiated (or supported) by the town. However, we do not agree that the town itself was obligated to conduct formal studies on this issue where the citizen petitioners provided sufficient evidence of flooding concerns, including photographs, affidavits of eyewitness observations, the hiring of a professional land surveyor to plot the elevation levels of the flood, and the enlistment of the landscape architecture and regional planning department at the University of Massachusetts to create a map of the observed flood. Compare *ibid.* (planning authority "was singularly inattentive" in producing *no* information about whether the surroundings were appropriate for residential use). Furthermore, the record shows that protecting the plaintiffs' parcel of land has been of interest to the town and its residents

to the zoning labels. See *Van Renselaar*, 58 Mass. App. Ct. at 109; *Hanna* v. *Framingham*, 60 Mass. App. Ct. at 426-427. The APR[14] and the farmland conservation overlay district impose practical limits on development of the surrounding property. Thus viewed, the restrictions on the locus were not more onerous than those in effect on surrounding land.[15] The revision of the FPC line, therefore, makes the plaintiffs' land more similar to and consistent with the surrounding parcels.

*Ulterior motives of the citizen petitioners.* The plaintiffs argued that the rezoning was more of an attempt to minimize development of the locus as opposed to concerns more directly related to flooding. For example, previous efforts to secure an APR in the town's favor or to have the locus acquired by the town had not met with success. The judge found that the town's counsel had advised the group who put forward the citizen's petition that "changing the zoning map was not the way to accomplish the results apparently being sought." There was consideration that the matter be referred to the town's conservation commission[16] or that the citizen petitioners apply to the Federal authorities (e.g., the Federal Emergency Management Agency) to have the flood plain map revised. The citizens group went ahead with the petition, however. The zoning amendment

dating back to 1985. We decline to second guess the town meeting vote where the evidence was sufficient to demonstrate that the purpose of the amendment (flood control) was proper. See *Home Builders Assn. of Cape Cod, Inc.* v. *Cape Cod Commn.*, 441 Mass. 724, 735-736 (2004).

[14]The fact that the APR netted some monetary benefit to the owners of adjacent property is not significant here. The question is how the subject parcel was limited compared to the adjacent land.

[15]According to § 3.3 of the by-law, there are numerous land uses that still may be permitted in the FPC district if the plaintiffs apply for a special permit.

[16]Although ultimately recommending referral to the town's conservation commission, the town's planning board wrote in a report to town meeting that "this property has many challenges. In addition to the Mill River along its east side, there are wetlands and a floodplain on the parcel. Because the parcel is so flat, a determination of exactly where the flood line is could affect many acres one way or another. That is, based on the height above sea level that the floodplain line is determined to be, more or less of the property is buildable or unbuildable." See *Home Builders Assn. of Cape Cod, Inc.* v. *Cape Cod Commn.*, 441 Mass. at 738 (points of disagreement naturally expected in the process of legislative deliberation).

received the two-thirds majority vote of the town meeting members required under G. L. c. 40A, § 5. As mentioned *supra*, the judge properly noted that the motives of the citizens who petitioned for the zoning change were not relevant.

*Conclusion.* Viewing the facts in light of the stated principles, we determine that the zoning amendment passed by town meeting is valid. A municipality validly may enact and amend a flood plain zoning by-law so long as there is a "substantial relation between the amendment and the furtherance of the general objects of the enabling act." See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 228 (1972). Indeed, "[t]he general necessity of flood plain zoning to reduce the damage to life and property caused by flooding is unquestionable." *Id.* at 233. Controlling development on land subject to flooding and maintaining adequate flood storage area are reasons rationally related to land use regulation. See *id.* at 233-234[17]; *Grenier* v. *Zoning Bd. of Appeals of Chatham*, 62 Mass. App. Ct. at 69 ("Restricting residential development within the path of floodwater, the flood plain, is a direct, logical, and reasonable means of safeguarding persons and property from those hazards occasioned by a flood and advances a substantial State interest . . ."). As there is sufficient evidence in the record to show that flooding was a legitimate concern, see *W. R. Grace & Co.-Conn.*, 56 Mass. App Ct. at 567 (town must "make a prima facie showing of a rational reason for its action"), we will not

[17]In *Turnpike Realty Co.* v. *Dedham*, 362 Mass. at 228, the Supreme Judicial Court identified three basic public policy objectives of restricting the use of flood plains: "(1) the protection of individuals who might choose, despite the flood dangers, to develop or occupy land on a flood plain; (2) the protection of other landowners from damages resulting from the development of a flood plain and the consequent obstruction of the flood flow; and (3) the protection of the entire community from individual choices of land use which require subsequent public expenditures for public works and disaster relief." The purposes set forth in the town's FPC district by-law are consistent with these objectives. Contrary to the plaintiffs' claims, the purposes set forth in the by-law, at §§ 3.221 and 3.222, are not limited to protecting lands that are subject to seasonal or periodic flooding, but also include "protect[ing] persons and property within the Town of Amherst from the hazards of flood inundation by assuring the continuation of natural flow patterns and the maintenance of adequate and safe floodwater storage capacity," and "protect[ing] the community against pollution and costs which may be incurred when unsuitable uses occur along water courses . . . or in areas subject to flooding."

376   68 Mass. App. Ct. 365 (2007)

*Andrews v. Town of Amherst.*

second guess the town on its judgment as to the extent of predicted flooding and the resulting need for revision of the FPC district line. See *id.* at 570 ("Once it is established . . . that the amendments have a substantive relationship to the promotion of the public welfare, the amendments are not, by definition, spot zoning, irrespective of the subjective purposes of the sponsors"). Availability of other means of regulating building on flood prone land does not invalidate the town's action. Furthermore, technical problems with the topographical map do not invalidate the action of the town as we "will not set such a vote aside, even if it could be shown . . . that the vote may have been influenced by mistaken beliefs." *Southern New England Conference Assn. of Seventh-Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701, 708 (1986). See *Durand*, 440 Mass. at 51, quoting from *Simon* v. *Needham*, 311 Mass. 560, 566 (1942) ("action of the voters is not to be invalidated simply because someone presented a reason that was unsound or insufficient in law to support the conclusion for which it was urged"). Cf. *Route One Liquors, Inc.* v. *Secretary of Admn. & Fin.*, 439 Mass. 111, 121 (2003), quoting from *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970) ("Legislative line drawing . . . does not violate equal protection principles simply because it 'is not made with mathematical nicety or because in practice it results in some inequality' ").

We defer to the legislative choices of the town in permissibly extending the FPC district to cover more area on the locus. Although reasonable minds may differ, the revision has not been shown to be substantially unrelated to the public health, safety, or general welfare, nor arbitrary or unreasonable. Rather, the enactment of the amendment constituted a valid exercise of the town's zoning police power.

Accordingly, we reverse the judgment of the Land Court under G. L. c. 240, § 14A, that article 18 as enacted at the 2002 annual town meeting of the town of Amherst is invalid, null, and void.[18]

*So ordered.*

---

[18]We decline the plaintiffs' request for appellate attorney's fees.