MARY E. LEONARD *vs.* TOWN OF BRIMFIELD & another.[1]

Hampden. March 5, 1996. - July 11, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law,* Taking of property. *Due Process of Law,* Taking of property. *Real Property,* Flowage of water. *Practice, Civil,* Motion to amend, Complaint, Amendment.

In an action alleging that a town's enforcement of its flood plain restriction constituted a compensable taking of the plaintiff's property under the United States Constitution, the plaintiff did not demonstrate that she had a reasonable investment-backed expectation that she would have been able to subdivide her property where she purchased the property subject to the restrictions on building on a flood plain and she had in fact taken no action to subdivide the property [154-155]; further, the plaintiff did not demonstrate that the economic impact on her was severe where the land remained suitable for its original agricultural purpose [155-156]; and finally, the zoning restriction and special permit process did not amount to a physical invasion by government such as would characterize a taking [156].

In a civil action the judge did not abuse his discretion in denying the plaintiff's motion to amend the complaint, filed more than five years after the original complaint was filed, in circumstances in which trial appeared imminent, and where the claims were interrelated with other similar claims that had been adjudicated or settled in prior proceedings. [156-157]

CIVIL ACTION commenced in the Superior Court Department on July 9, 1987.

Motions to amend and to dismiss were heard by *William H. Welch,* J., and the case was heard by *John F. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Greg T. Schubert* for the plaintiff.

*William Hewig, III,* for the defendant.

---

[1]Cynthia K. Powers, individually and as chairperson of the Brimfield conservation commission.

LYNCH, J. The plaintiff owns sixteen acres of land in the town of Brimfield (town). This action, commenced in 1987, is one of three filed by the plaintiff involving this property contesting actions by the town which effectively limit the plaintiff's use of this land. The plaintiff alleges that the town is artificially channeling surface water onto the property and is improperly enforcing a flood plain zone which restricts development of the property.

As required by the town's zoning by-law, the plaintiff applied to the zoning board of appeals (board) for a special permit to build on her land as it was located in an area designated as a flood plain zone. The board issued a special permit which limited construction on land at or above the 370-foot elevation mark. This effectively limits construction to approximately six of the plaintiff's sixteen acres.

In the first action the plaintiff appealed from the board's special permit restriction as arbitrary or capricious. A Superior Court judge upheld the board's decision, and the Appeals Court affirmed. 27 Mass. App. Ct. 1408 (1989). We denied further appellate review. 405 Mass. 1204 (1989).

The second action involved water channeling claims and was settled by a release dated October 28, 1988. In that release, the plaintiff discharged the town and the town's insurer from all water channeling claims to date including the channeling claims in the present case.

In this action the plaintiff alleges that: (1) the town is liable for damages for artificially channeling surface water onto her property (counts one and two); (2) the town's enforcement of its flood plain restriction constituted a compensable taking under the United States Constitution (count three); and (3) the plaintiff's civil rights had been violated by the chairperson of the Brimfield conservation commission and she was entitled to damages under G. L. c. 12, § 11I (1994 ed.) (count four).[2]

The defendants moved to dismiss counts one, two, and three of the complaint arguing that the water channeling release of October 28, 1988, barred those claims. The plaintiff countered by filing a motion to amend with alternative amended complaints. In the first amended complaint, she sought to limit her water channeling claim to damages incurred after the date of the release. In the second amended

---

[2]There was no appeal from the denial of that claim.

complaint, she alleged that the enforcement by the town of the flood plain restriction constituted a compensable taking under State law.

The motion judge denied the motion to amend, and allowed the defendants' motion to dismiss counts one and two, treating it as a motion for summary judgment.

A bench trial was held on counts three and four of the present action. The judge found for the defendants on both counts and dismissed the plaintiff's claims for damages. We transferred the case here on our own motion. The plaintiff argues that the judge applied the wrong standard to decide whether the enforcement of the flood plain restriction was a compensable "taking" under Federal law. She also argues that the motion judge erred in denying her motion to amend the complaint.

The validity of the board's enforcement of this zoning by-law has been adjudicated. Therefore, we do not consider issues settled in previous litigation as to the actual likelihood of flooding at the various elevations, nor the validity of the special permit as applied to the plaintiff's land. The only issues before us are whether the plaintiff should be compensated by the town for the decrease in value of her land caused by the restriction and whether she should have been permitted to amend her complaint.

*The regulatory "taking" issue.* The plaintiff argues that the town's actions constitute a taking under the Fifth Amendment to the United States Constitution.

When a regulatory taking involves neither a physical invasion nor a complete deprivation of use, as in the case here, Federal law has established several interrelated factors which are to be considered in determining whether a compensable taking has occurred: "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' " *Connolly* v. *Pension Benefit Guar. Corp.*, 475 U.S. 211, 225 (1986), quoting *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978).

(1) *Investment-backed expectations.* The plaintiff contends that, at the time of purchase, she intended to subdivide the sixteen acres and because of the special permit restriction, she lost the market value of two parcels in her subdivision.

A property owner's investment-backed expectations must be reasonable and predicated on existing conditions. *Ruckelshaus* v. *Monsanto Co.*, 467 U.S 986, 1005 (1984). It must be more than a "unilateral expectation or an abstract need." *Id.*, quoting *Webbs Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 161 (1980). The plaintiff's argument fails because she could not have had a reasonable, investment-backed expectation that she would have been permitted to subdivide the flood plain property.

Her property was within a designated flood plain zone and a special permit was required for construction on the lots in question.[3] At the time she purchased the property she had constructive notice of the zoning map, which was available for viewing at the building inspector's office. Her position that the flood plain map should have been recorded with the registry of deeds is without merit. The statute which sets forth the requirements of municipal zoning regulations contains no such requirement, see, e.g., G. L. c. 40A (1994 ed.), and she offers no citation to support this argument.

Because she purchased the property subject to the restrictions on building in a flood plain, she may not complain about the loss of a right she never acquired. See *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1027 (1992). "[T]he government is not required to compensate an individual for denying him the right to use that which he has never owned." *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 308 (1990), quoting *Flynn* v. *Cambridge*, 383 Mass. 152, 160 (1981).

Furthermore, the trial judge found that the parcel at issue is a single sixteen-acre parcel, not individual lots within this parcel as the plaintiff contends, and that the plaintiff had taken no action to subdivide the property. This finding is completely supported by the record. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). The plaintiff did not have a reasonable investment-backed expectation that she could subdivide the property.

(2) *Economic impact.* The plaintiff's theory of economic

---

[3]We have held that a purchaser of land subject to a restriction at the time of purchase has a right to challenge the continued application of the restriction. *Lopes* v. *Peabody*, 417 Mass. 299, 303 (1994). Here, the plaintiff availed herself of her right to contest the special permit restriction, but did not prevail.

impact on the property was also made without considering the existing zoning restriction.

Even if we ignore the fact that the zoning restriction was in place prior to the plaintiff's purchase of the property, the evidence was insufficient to show that the economic impact was severe. The plaintiff's economic loss argument is based on her inability to build houses on approximately ten acres of her sixteen-acre parcel. This has not frustrated her purpose to build her own home on the parcel which she has done. There is no dispute that the complete sixteen acres is suitable for agricultural, horticultural, and recreational purposes. The land was used for agricultural purposes prior to her purchase and can continue to be used as such. As stated by the United States Supreme Court: "Zoning laws are, of course, the classic example [of land use regulations] which have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property" (citations omitted). *Penn Cent. Transp. Co.* v. *New York City, supra* at 125.

(3) *The character of the governmental action.* The final factor that may be considered is the character of the governmental action. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government." *Id.* at 124. Here, there was no physical invasion of the plaintiff's property alleged apart from the water channeling claims. Those claims are barred by the release given in connection with her prior litigation.[4] Her takings claim is based on the zoning restriction and special permit process which is not a physical invasion by the government.

Thus, in view of the facts before us, the effect of the zoning and special permit restriction on the plaintiff's land does not constitute a compensable taking under Federal law.

(4) *Disallowance of motions to amend.* The plaintiff also argues that she should have been permitted to amend her complaint to include claims based on water channeling that occurred after October 28, 1988, and, in the alternative, a claim for damages under State law for the devaluation of her property caused by the zoning restriction. Under the rules of civil procedure, leave to amend a complaint shall be "freely

---

[4]The release states in pertinent part: "This release excludes case #87-1238 [the instant case] except as to water [channeling] claims."

given when justice so requires." Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974). The decision to grant such a motion lies within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion. *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991).

The judge denied the motion to amend for the following reasons: (1) the motion to amend was filed more than five years after the plaintiff filed the original complaint; (2) the case had been called as an "inventory case," thus the judge believed that the trial was imminent; (3) the claims were interrelated with the claims that had been adjudicated or settled in prior proceedings.

In these circumstances, it was not an abuse of discretion for the judge to deny the motions to amend. We have considered undue delay, imminence of trial, as well as futility of the claim to be valid reasons for the denial of a motion to amend. See *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 272 (1993); *Mathis* v. *Massachusetts Elec. Co.*, *supra* at 264-265; *Castellucci* v. *United States Fidelity & Guar. Co.*, 372 Mass. 288, 292 (1977).

Although the case was not actually tried for seventeen months after the denial of the motion to amend, the case had been pending for over five years and the judge believed trial was imminent. Those facts alone provided a sufficient basis for the judge's action. The plaintiff's motion to amend was properly denied.

*Judgment affirmed.*