Neel, J.
Plaintiff Boston Federal Savings Bank appeals, by petition for certiorari, the defendant City of Worcester Conservation Commission’s (“the Commission”) denial of plaintiffs notice of intent to build on land subject to defendant’s wetland ordinance (Count I of the second amended complaint). In the *150 alternative, plaintiff seeks judgment on its claim of unlawful regulatory taking (Count II). The matter was heard May 6, 1997. For the reasons set forth below, Count I will be dismissed with prejudice, and judgment will enter for defendant on Count II.
BACKGROUND
This case necessitated a hybrid proceeding: while a petition for certiorari under G.L.c. 249 §4 is determined on the basis of the administrative record, FIC Homes of Blackstone v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 691 n. 14 (1996), rev. den. 424 Mass. 1104 (1997), a takings claim is not confined to the record below. Id. Accordingly, the Court allowed both parties to supplement the record, by agreement without jury. The Court will consider such evidence only as it relates to Count II.
I. PETITION FOR CERTIORARI (COUNT I)
Plaintiff appeals the Commission’s decision of March 18, 1994 denying a permit to construct a single family house on each of two lots owned by plaintiff in Worcester (“March 18, 1994 decision”). The permit was sought pursuant to a Notice of Intent Under the City of Worcester Wetlands Protection Ordinance[1] and Wetlands Protection Regulations[2] which plaintiff filed with the Commission on February 15, 1994 (“February 15, 1994 Notice of Intent”).
Section 8 of the Ordinance provides that “(ajppeal from a decision of the Conservation Commission pursuant to the requirements solely under this ordinance shall be taken within ten (10) days from the date from the receipt of such decision to the Superior Court. . . in accordance with the Massachusetts General Laws.” G.L.c. 249, §4 provides that an action for certiorari “to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal,” shall be commenced within “sixty days next after the proceeding complained of.” The procedural history of this action raises the question whether the appeal of the March 18, 1994 decision was timely taken.
Plaintiff commenced this action on August 13, 1993, as an appeal of a decision of the Commission dated August 4, 1993 (“August 4, 1993 decision”). In that decision the Commission denied a permit sought pursuant to a Notice of Intent which plaintiff filed with the Commission on January 28, 1993 (“January 28, 1993 Notice of Intent”). The January 28, 1993 Notice of Intent sought permission to construct single family houses on Lots 7 and 8 of a parcel which plaintiff had purchased in lieu of foreclosure. Plaintiffs appeal of the 1993 decision was timely under both Section 8 of the Ordinance and G.L.c. 249, §4.
As plaintiff alleges in the original complaint, after receiving zoning variances for Lots 7 and 8, plaintiff revised the January 28, 1993 Notice of Intent and, as noted above, in February 1994 submitted the February 15, 1994 Notice of Intent. After the Commission denied the latter Notice of Intent on March 18, 1994, defendant waited until February 8, 1995 to file an “Amended Complaint” in this action,[3] alleging that the March 18, 1994 decision was arbitrary and capricious, and exceeded the Commission’s authority. Thereafter, on January 30, 1996, plaintiff filed a “Second Amended Complaint,” which added an alternative count claiming unlawful taking. The prayers for relief in both the Amended Complaint and the Second Amended Complaint request an order that the March 18,1994 decision be annulled, and that the February 15, 1994 Notice of Intent be approved; neither of the amended complaints seeks any relief with respect to the August 4, 1993 decision.
Thus, on the record before the Court, the first occasion on which plaintiff sought review of the March 18, 1994 decision was upon filing of the Amended Complaint on February 8, 1995, nearly eleven months later. That filing qualifies neither as an action “commenced within sixty days next after the proceeding complained of,” under G.L.c. 249, §4, nor as an appeal “taken within ten (10) days from the date from the receipt of such decision,” under Section 8 of the Ordinance. Nor does Mass.R.Civ.P 15(c) (if it applies) aid defendant. Under that rule, a claim asserted in the amended pleading will relate back to the original pleading for statute of limitations purposes whenever the new claim “arose out of the conduct, transaction, or occurrence set forth ... in the original pleading.” Id. Here, the new claim arose out of conduct —the March 18, 1994 decision — that had not occurred at the time the original complaint was filed, and concerned a separate and subsequent Notice of Intent proposing a different project than that proposed by the January 28, 1993 Notice of Intent.
That defendant did not assert the statute of limitations as a defense is immaterial:
Certiorari actions must be commenced within sixty days after the conclusion of the proceeding being challenged. G.L.c. 249, §4. Failure to do so is such a “serious misstep” that such an action must be dismissed when not timely filed, even if the defendants fail to plead the statute of limitations as an affirmative defense.
Pidge v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, 32 Mass.App.Ct. 14, 17-18 (1992). Accordingly, Count I will be dismissed.
II. CLAIM OF UNLAWFUL TAKING (COUNT II)
Plaintiff claims that the actions of the Commission in its application of the Ordinance and Regulations have effected a taking of Lots 7 and 8 without compensation, in contravention of the Fifth Amendment to the Constitution of the United States.[4] The principles for determining whether defendant has effected a regulatory taking under the Fifth Amendment are set out in FIC Homes of Blackstone v. Conservation Commission of Blackstone, supra, 41 Mass.App.Ct. at 688:
*151 As provided by Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1027, 1029 (1992), if application of the wetlands by-law deprived the plaintiffs of all economically beneficial use of their property, a per se taking would have been effected, unless certain exceptions obtain. See Lopes v. Peabody, 417 Mass. 299, 303 (1994). If, however, the regulation has resulted in less than a total loss of the economic value of the plaintiffs’ property, the question as to whether there has been a regulatory taking must be analyzed under pre-Lucas principles requiring the consideration of several interrelated factors, viz., (i) the validity of the by-law as applied to the plaintiffs’ property; (ii) the plaintiffs’ reasonable investment-backed expectations; (ill) the economic impact on the plaintiffs’ property; and (iv) the character of the governmental action.
Following the principles and analytical approach of FIC Homes, I find and rule as follows.
A. Per se taking.
Absent certain exceptions, a per se taking has occurred if plaintiff has been deprived of all the economic value of its property. To make that determination, the Court must compare the value that has been taken from the property with the value that remains in the property; thus, “one of the critical questions is determining how to define the unit of property “whose value is to furnish the denominator of the fraction.’ ” FIC Homes of Blackstone v. Conservation Commission of Blackstone, supra at 688, quoting Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 497 (1987). “In determining the proper ‘denominator,’ we consider the regulation’s effect on the entire parcel, rather than on individual segments of the parcel.” FIC Homes, supra at 688.
Here, as in FIC Homes, plaintiff purchased a parcel of land comprising a number of individual lots. In this case, plaintiffs purchase was by deed in lieu of foreclosure dated April 17, 1991 on a mortgage given by the prior owner in 1988 in the original principal amount of $225,600. At the time of plaintiffs purchase in 1991 the property encompassed eight lots; by June 1993 plaintiff had built houses on and sold Lots 1-5 for a total of $594,680. Lot 6 is acknowledged to be unbuildable. According to the plaintiffs appraiser, Lots 7 and 8 are worth $56,000 if buildable, and $4,000 if not buildable (Lot 6 was appraised at $2,000). This represents a loss in value of $52,000. As in FIC Homes, plaintiff presented no evidence as to its costs for constructing homes on the lots, nor was there evidence indicating the plaintiffs net profit from sale of the five buildable lots. Id. at 689. While the purported loss in this case is not as small, relative to the whole parcel, as in FIC Homes, it is nevertheless reasonable to conclude that, with gross sales of close to $600,000, a loss of $52,000 does not represent “a 100 percent loss of economic value.” Id. In any event, plaintiff did not carry its burden of demonstrating the severity of its economic loss as to the entire parcel, and should not benefit from failing to carry that burden. Id. at 689 n. 12. Accordingly, plaintiff has failed to prove a per se taking of its property.
B. Pre-Lucas analysis.
Under the pre-Lucas analysis, the Court examines “several interrelated factors to determine whether there has been a regulatory taking of plaintiffs property.” Id. at 689.
1. Validity of the by-law as applied to plaintiffs property.
The plaintiff carries the burden of demonstrating that the Ordinance and Regulations as applied to its property do not “substantially advance legitimate State interests.” Lopes v. Peabody, 417 Mass. at 307 n. 13. The Ordinance protects a variety of “wetland values,” including “public or private water supply, groundwater, flood control, erosion and sedimentation control, storm damage prevention, water pollution, fisheries, and wildlife habitat ...” Ordinance, Section 1. The quoted language is identical to the statement of interests protected by the by-law at issue in FIC Homes, as to which “(t]here is no question that these are legitimate State interests.” FIC Homes, supra at 690. Here also, as in FIC Homes, defendant is permitted to include requirements in its Regulations that are “more stringent than those in the act,” id.; the Regulations forbid “construction activity” within fifteen feet of a wetland resource area, and bar the placement of any permanent structure within thirty feet of a wetland resource area. Regulation 4.2.4. Plaintiff thus has the burden of proving that the Ordinance and Regulations, as applied to its property, do not substantially advance the town’s interest in protecting wetlands values. Id.
Plaintiff concedes that “(i]f a house cannot be sited within 30 feet of the agreed wetland line, it is not possible to construct a single-family home on either Lot 7 or 8.” Plaintiffs Proposed Finding No. 27. Plaintiff argues, however, that the Regulations do not prohibit siting of a building within thirty feet of the wetland line. Plaintiff relies on that portion of Regulation 4.2.4 which provides:
Notwithstanding the above [fifteen and thirty foot restrictions], . . . the Commission may allow work closer to a resource area if the applicant demonstrates: (1) alternatives have been considered and in the judgement of the Commission no practical alternative is available; (2) project scope and design minimize work in close proximity to resource areas; (3) site conditions (including but not limited to slope, soil type and hydrology) will allow prevention of wetland damage from such work; and (4) such work will not lead to encroachment on the resource area after completion of the project.
Plaintiff argues that the portion quoted gives the Commission discretion to allow “work closer to the resource area" than fifteen or thirty feet, and that “work” should be interpreted to mean not just construction activity but also “works” such as buildings, paved *152 areas, and other “permanent structures.” The Regulation does not support plaintiffs interpretation. If the Town had intended such an interpretation, it could have used the words “works” or “a work” instead of simply “work.” The latter term, in common and ordinary usage, and in context in the Regulation, refers to “construction activity,” not “permanent structure." Accordingly, the language relied upon does not give the Commission discretion to allow siting of a permanent structure within thirty feet of a wetland line. That the Commission may have earlier implied a different interpretation, or may have allowed such siting in a few cases factually distinct from this one, does not change the clear meaning of the language by which it must regulate defendant’s wetlands.
Unable to satisfy the thirty-foot requirement, plaintiff argues that its proposed construction project would not harm the wetland resource. Plaintiff offered the testimony of Randall Jones, of Jones & Beach Engineers, who designed sewers, drainage and other aspects of the project at issue, and worked with plaintiff to revise the project to meet concerns of the Commission. After the August 4, 1993 denial, Jones and plaintiff redesigned the house locations and obtained variances allowing the houses to be sited a minimum of twenty feet from the wetlands line (rather than the thirty required); converted the foundation from full to slab, to protect groundwater flow; provided a substitute wetland area; and planned a row of cedar trees to demark the fifteen foot buffer. Jones testified that all of these measures would minimize any negative impact on the wetland area, most of which is uphill from the planned construction. With regard to possible increased runoff onto other property, Jones prepared an analysis which indicated that there was no significant increase or decrease in runoff, and opined that the project as revised would result in no increased flooding. He also opined that the revised project posed no adverse impact on the wetland area.
Glenn Krevosky, an environmental consultant, also testified for plaintiff. He determined and flagged the final wetland line on Lots 7 and 8. After the March 18, 1994 decision denying a permit, Krevosky consulted and sought variances to maximize the distance between the houses and the wetland line. He testified that, because the wetlands involved are comparatively small, and predominantly uphill from the project, they will not be adversely affected if the project is built in accordance with the revised proposal. Relying on the Jones drainage plan and a Department of Environmental Protection study, he opined that the planned project would not increase the risk of flooding.
Defendant called Hossein Haghanizadeh, a civil engineer employed by the Worcester Department of Public Works. He provides technical assistance to the Commission, and advised the Commission during its consideration of plaintiffs proposals for Lots 7 and 8. Haghanizadeh testified that flooding was one of his, and the Commission’s, chief concerns. He noted that the current flooding situation is controlled by a ten inch drain pipe at the southeast comer of Lot 8, and questioned whether the pipe could handle increased flow. He disputed Jones’ runoff calculations, noting that certain values were not reliable and thus that the results were not reliable. In his opinion, the proposed alterations of the surfaces of Lots 7 and 8 would significantly increase the runoff from those properties. He testified that the clay soil type on the property would cause sediments, fertilizer and pollutants to wash onto other properties. Finally, he testified that the absence of clay barriers on the lots would lead to drying up of the wetland.
The Commission’s March 18, 1994 decision reflects valid concerns stated by Haghanizadeh. The decision recites that the project proposal was presented by Krevosky for plaintiff, and that the Commission had considered the Notice of Intent dated February 14, 1994, together with plans dated March 1993 and revisions of June 6, 1993, January 4 and 7, 1994, and February 11, 1994. The Commission bases its denial on the proposal’s failure to comply with the thirty-foot requirement of Regulation 4.2.4, and on statements at the public hearings that “there are problems with flooding on this and the abutting properly. Activities as proposed will worsen this condition." In light of the materials before it and the advice it had received from Haghanizadeh, the Commission had a substantial basis for concern about flooding and the effects of siting houses within thirty feet of the wetlands. Accordingly, the Commission validly applied the Ordinance to plaintiffs property when it denied the order of conditions in its March 18, 1994 decision.
2. Plaintiffs reasonable investment-backed expectations.
“In order to rise to the level of an unconstitutional regulatory taking, the investment-backed expectations frustrated by governmental regulation must be ‘reasonable and predicated on existing conditions,’... not merely a ‘unilateral expectation or an abstract need.’ ” FIC Homes, supra at 693 (citations omitted). Here, as in that case, when plaintiff purchased the property the Ordinance and Regulations were already in effect, including Regulation 4.2.4 prohibiting the siting of any permanent structure within thirty feet of a wetland. Plaintiff “therefore had no reasonable expectation that... its project would not be subject to the [Regulations].” Id.
3. Economic impact.
As noted above, plaintiff has not demonstrated that its economic loss was severe. Of the eight lots purchased, one (Lot 6) was eventually acknowledged by plaintiff to be unbuildable. The Commission’s action had the effect of making two additional lots unbuildable. “A reduction in the number of houses that an owner may build is a diminution in value and not a taking.” FIC Homes, supra at 694, quoting Moskow v. Commissioner of Envtl. Mgmt., 384 Mass. at 534 n.3. Nor was plaintiff deprived of “all beneficial use of the *153 property.” FIC Homes, supra at 694. Plaintiff has built houses on five of the seven buildable lots it purchased; compare Leonard v. Brimfield, 423 Mass. 152, 156 (1996) (economic loss not severe where owner prevented from constructing houses on more than half her acreage). Moreover, as in FIC Homes, Lots 7 and 8 “may still be devoted to woodland, wetland, and recreational purposes, which are beneficial uses.or as additional acreage for residential abutters’ properties,” id. at 694, and are valued by plaintiffs appraiser at $2,000 per lot, assuming an abutter with “no special motivation to buy.” Appraisal of Lots 6, 7, & 8 (Ex. 18), at 54.
4. Character of the governmental action.
“ ‘A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government.’. . . Here, no physical invasion of the plaintiffi’s] property has been alleged." Id. at 695 (citations omitted).
Accordingly, the application of the Ordinance and Regulations to the plaintiffs property does not constitute a compensable taking under Federal law.
To the extent that the parties’ respective requests for findings and rulings are inconsistent with the foregoing, they are denied.
ORDER
For the reasons stated above, Count I of the Second Amended Complaint is DISMISSED WITH PREJUDICE. It is further ORDERED that judgment shall enter for defendant on Count II.

 Chapter 18, City of Worcester Revised Ordinances (adopted May 8, 1990 “under the . . . Home Rule statutes, independent of the Wetlands Protection Act, G.L.c. 131, Sec. 40 [“the act”] . . . ){“the Ordinance”).

 Approved July 2, 1990, pursuant to the Ordinance (“the Regulations”).

 The case docket contains no entries for calendar 1994 except for two “case status” clerk’s notes, and confirms the dates stamped on the Amended Complaint and Second Amended Complaint. During the evidentiary portion of the hearing on this matter, the parties jointly submitted Exhibit 17, titled "Timeline and Summary of Conservation Commission Issues on Lanesboro Road Lots 6, 7, & 8,” the last entry of which reads “April 22, 1994 — Complaint filed by applicant in Worcester Superior Court.” No indication of any such filing appears in the docket, and the entry will be ignored.

 Count II of the Second Amended Complaint claims an unlawful taking also under Article 10 of the Massachusetts Declaration of Rights; however, plaintiffs Requests for Findings of Fact and Rulings of Law seeks a ruling only under the federal claim. In any event, plaintiff has “advanced no reason why [the Court] should create takings principles more favorable . . . than those developed under the Federal Constitution.” Steinbergh v. Cambridge, 413 Mass. 736, 738 (1992), cert. denied, 508 U.S. 909 (1993).