LEO A. ZANGHI, trustee,[1] *vs.* BOARD OF APPEALS OF BEDFORD
& another.[2]

No. 02-P-1271.

Suffolk. November 6, 2003. - May 3, 2004.

Present: GREENBERG, BERRY, & McHUGH, JJ.

*Subdivision Control,* Zoning requirements. *Zoning,* By-law, Lot size, Validity of by-law or ordinance. *Constitutional Law,* Zoning, Taking of property.

A Land Court judge properly ruled that the application of a town's zoning by-law that prevented the owner of several lots in a subdivision from building on one of the lots did not affect a categorical taking of that owner's property under the just compensation clause of the Fifth Amendment to the United States Constitution, where the town did not deprive his property, which he originally purchased as a larger, undivided parcel, of all beneficial economic use [85-87]; moreover, there was no regulatory taking where the by-law in question was valid as applied to the plaintiff's property, his investment-backed expectations had not been unreasonably frustrated, the economic impact of the by-law was not severe, and there was no physical invasion of the property [87-90].

CIVIL ACTION commenced in the Land Court Department on April 12, 1996.

The case was heard by *Peter W. Kilborn,* C.J.

*Mark W. Corner* for the plaintiff.

*Michael C. Lehane* for the defendants.

GREENBERG, J. Leo A. Zanghi, trustee of The Family Trust, owner of several lots in a subdivision in the town of Bedford, commenced this Land Court action in 1996. The complaint sought damages and a declaratory judgment that application of § 6.2.1 of the Bedford zoning by-laws deprived Zanghi of all economically beneficial use of lot 36, one of the parcels shown in Zanghi's 1965 subdivision plan. The subdivision plan is

---

[1]Of The Family Trust.

[2]Town of Bedford.

reproduced as an Appendix to this opinion. The effect of the last sentence of the by-law,[3] which sets forth lot area requirements, is that a buildable lot in the residential-A district must contain at least 26,000 square feet, no portion of which overlays a flood plain or wetland district. Lot 36 does not comply. As a result, the town's building inspector denied Zanghi's application for a building permit. Zanghi then filed a petition with the board of appeals of Bedford (board) to reverse the decision. After conducting a public hearing, the board unanimously voted to affirm the building inspector's decision. Thereafter, Zanghi petitioned the Land Court for a declaratory judgment as to the constitutionality of § 6.2.1 as applied to lot 36.

A judge of the Land Court ruled that application of the by-law did not deprive Zanghi of all economically beneficial use of lot 36, so that a per se or "categorical" taking was not effectuated. He also ruled that, under "pre-*Lucas*" principles, see *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992), Zanghi's claim failed the four-factor test set out in *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. 681, 688 (1996). In essence, he ruled that there had been no taking under the just compensation clause of the Fifth Amendment to the United States Constitution. Zanghi appeals.

1. *Background.* "The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, or denies an owner economically viable use of his land." *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980) (citations omitted). A landowner is entitled to monetary compensation for the loss or harm caused

---

[3]Section 6.2.1 reads as follows:

"Lot area shall be determined by an area within a lot, including any area within said lot over which easements have been granted, provided that no area within a street shall be included in determining minimum lot area. Any area of any lot more than 500 feet from the lot frontage shall not be used to satisfy any of the minimum lot area. *In addition, the Flood Plan/Wetland district area of any lot shall not be used to satisfy more than thirty-five (35%) of the minimum lot area*" (emphasis added).

by such regulation. See *First English Evangelical Lutheran Church* v. *Los Angeles*, 482 U.S. 304, 319-321 (1987).

Traditionally, courts employed a balancing test to determine, in a given case, whether the government action effected a regulatory taking. See *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393 (1922); *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104 (1978); *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, 480 U.S. 470 (1987). Under the balancing test, courts considered "[t]he economic impact of the regulation [on the landowner] and, particularly, the extent to which the regulation interfered with distinct investment-backed expectations," and whether the governmental action could be "characterized as a physical invasion by government." *Penn Cent. Transp. Co.*, 438 U.S. at 124. Courts nevertheless upheld land-use regulations that destroyed or adversely affected property interests where such regulations promoted health, safety, morals, or general welfare. *Id.* at 125.

A major change in this formulation took place in 1992. In *Lucas* v. *South Carolina Coastal Council, supra*, the United States Supreme Court reviewed a regulatory change affecting two beachfront lots purchased by Lucas in 1986. In 1988, the South Carolina Legislature enacted the Beachfront Management Act, which prohibited Lucas from erecting any permanent habitable structures on his two lots. *Id.* at 1007. A trial court found Lucas's lots to have been rendered valueless and awarded damages as "just compensation,"[4] but the State's Supreme Court reversed, finding that the statute "involved an exercise of South Carolina's 'police powers,' to mitigate the harm to the public interest that Lucas's use of his land might" cause. *Id.* at 1009, 1020-1021. The United States Supreme Court disagreed, and held that where regulations prohibit all economically viable use of land, the landowner is entitled to compensation, no matter how weighty the asserted public interests involved. *Id.* at 1030-1032. Under *Lucas*, a "categorical" taking occurs when a government regulation deprives a property owner of "all economically beneficial or productive use of land." *Id.* at 1015.

---

[4]"Just compensation for a governmental taking of private property is to be measured by the fair market value of the property taken." Serkin, Valuing Interest: Net Harm and Fair Market Value in *Brown* v. *Legal Foundation of Washington*, 37 Ind. L. Rev. 417, 417 (2004).

2. *Categorical taking.* With that historical context in mind, we turn to the analysis of the instant case. Zanghi has difficult hurdles to overcome. No Massachusetts appellate court has addressed the circumstances in which compensation is warranted for a per se or categorical taking under *Lucas* principles.[5]

Zanghi contends that application of § 6.2.1 in this instance amounts to a categorical taking because he cannot build on lot 36. He argues that the takings analysis should focus exclusively on lot 36 and not on all of the lots in the subdivision. We do not agree. When determining whether property owners have been deprived of all of the economic value of their property, Massachusetts courts consider the regulation's effect on an entire parcel, rather than on individual segments of the parcel. *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 688-689. " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, [courts should focus instead] both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." *Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. 530, 533 (1981), quoting from *Penn Cent. Transp. Co.*, 438 U.S. at 130-131; *Daddario* v. *Cape Cod Commn.*, 425 Mass. 411, 416, cert. denied, 522 U.S. 1036 (1997).

*FIC Homes of Blackstone, Inc.*, appears to be controlling here. In that case, the plaintiffs had, by one deed, purchased thirty-eight lots in a subdivision. *FIC Homes of Blackstone, Inc.*, 41 Mass. App Ct. at 689. We considered the entire thirty-eight-lot parcel, not just the single lot that was rendered unbuildable by a wetlands by-law, and concluded that there had been no per se taking because the plaintiffs had not been

---

[5]In *Lopes* v. *Peabody*, 417 Mass. 299, 304-307 (1994), the Supreme Judicial Court remanded a case involving a possible categorical taking to the Land Court. On remand, the Land Court amended Peabody's wetlands conservancy district so as to permit an economically beneficial use of the plaintiff's property. *Lopes* v. *Peabody*, 3 Land Ct. Rptr. 78, 81 (1995). Having thus found the regulation to be inapplicable to the plaintiff's property, the Land Court also found that there had been no permanent regulatory taking of the property. *Ibid.*

deprived of all economically beneficial use of the parcel as a whole. *Ibid.* Similarly, in this case, in 1965, Zanghi originally purchased a larger parcel of land by one deed and later subdivided the parcel into eleven lots. In 1971, he built homes on lots 33 and 34, and sold both lots for a total of $84,500. He has, therefore, not been deprived of all economically beneficial use of the original parcel as a whole.

In *Chaume* v. *Zoning Bd. of Appeals of Fitchburg*, 27 Mass. App. Ct. 1135, 1136 (1989), Fitchburg's zoning ordinance required a minimum area of 6,000 square feet for the construction of a dwelling in the district where the plaintiff's land was located, and his lot contained only 4,500 square feet. We held that the application of the ordinance to the plaintiff's property did not deprive him of all beneficial use of the property. In reaching this conclusion, the court noted that contiguous to the plaintiff's lot were two nonconforming lots, one of which was owned by the city and either of which, when combined with the plaintiff's lot, would provide a lot with conforming area. *Ibid.* This offered the plaintiff a possible economically beneficial use for his lot. The ordinance did not deprive the plaintiff's lot of all its value merely "because it prevent[ed] the land from being put to its most profitable use . . . or because the value of the land [was] substantially diminished." *Ibid.*, quoting from *Mac-Neil* v. *Avon*, 386 Mass. 339, 343 (1982).

In this case, the possibility of combining lots is even more compelling than in *Chaume* because Zanghi actually owns several of the lots contiguous to lot 36. The Land Court judge found that lot 36 can be combined with these surrounding lots for cluster development,[6] and that the application of § 6.2.1 to lot 36 does not deprive Zanghi of all economically beneficial use of his property. Although cluster development requires a special permit, Zanghi may not claim a taking unless he has

_____

[6] "A 'cluster development' is a residential development in which the buildings and accessory uses are clustered together into one or more groups." Bobrowski, Massachusetts Land Use & Planning Law § 9.06, at 279 n.99 (2d ed. 2002). The groups are separated from each other and from adjacent property by open land. A cluster development is "permitted only on a plot of land of such minimum size as a zoning . . . by-law may specify that is divided into building lots with" use restrictions different from those otherwise contained in the by-laws. *Ibid.*

exhausted all administrative remedies. *FIC Homes of Black-stone, Inc.*, 41 Mass. App. Ct. at 690 n.13 ("[t]aking claims are generally not ripe until all administrative remedies have been sought"). Zanghi has not done so.

There is no categorical taking here, even if combining lots for cluster development leaves Zanghi with a less profitable use of his land than he would have if he could build a single-family dwelling on lot 36. See *MacNeil* v. *Avon*, 386 Mass. at 343; *Chaume*, 27 Mass. App. Ct. at 1135-1136; *W.R. Grace & Co.-Conn.* v. *City Council of Cambridge*, 56 Mass. App. Ct. 559, 575 (2002) (a substantial diminution in the value of property does not, by itself, create a right of compensation).

3. *Pre*-Lucas *factors.* Our inquiry, however, does not end here. Because the regulation in this case has resulted in less than a total loss of economic value of Zanghi's property, "the question as to whether there has been a regulatory taking must be analyzed under pre-*Lucas* principles requiring the consideration of several interrelated factors, viz, (i) the validity of the by-law as applied to [Zanghi's] property; (ii) [Zanghi's] reasonable investment-backed expectations; (iii) the economic impact on [Zanghi's] property; and (iv) the character of the governmental action." *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 688.

The first pre-*Lucas* factor, the validity of the zoning by-law as applied to Zanghi's property, does not indicate that there has been a regulatory taking in this case. Zanghi has the burden of demonstrating that § 6.2.1 "as applied to [his] property does not 'substantially advance legitimate State interests.' " *Id.* at 690, quoting from *Lopes* v. *Peabody*, 417 Mass. 299, 307 n.13 (1994). In *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 690, the wetlands by-law in question protected a variety of "wetlands values," including flood control and water pollution prevention. We concluded that there was "no question that these are legitimate State interests," and that the by-law was valid as applied to the plaintiffs' property. *Id.* at 690-693. Similarly, in this case, the Land Court found that the purposes of the by-law "are to protect against flooding and to maintain water quality," and that there is a reasonable relationship between the limitations of § 6.2.1 and these meritorious goals.

The Land Court went on to conclude that Zanghi did not establish the invalidity of § 6.2.1 as applied to his property, and there is no reason to disturb that conclusion.

The next pre-*Lucas* factor is Zanghi's reasonable investment-backed expectations. In this regard, this case differs from *FIC Homes of Blackstone, Inc.*, because when the plaintiff in that case purchased the property in question, the wetlands by-law was already in effect. *Id.* at 693-694. See *Leonard* v. *Brimfield*, 423 Mass. 152, 155, cert. denied, 519 U.S. 1028 (1996) ("Because [the plaintiff] purchased the property subject to the restrictions on building in a flood plain, she may not complain about the loss of a right she never acquired"). Contrast *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 626-628 (2001) (not a bar to takings claim that plaintiff acquired property after the restrictive regulations had been put in place). Here, Zanghi purchased the property in 1965, and § 6.2.1 was enacted in 1978.

Nevertheless, Zanghi has not conclusively demonstrated that § 6.2.1 interfered with his investment-backed expectations to an unreasonable extent. "A property owner's investment-backed expectations must be reasonable and predicated on existing conditions." *W.R. Grace & Co.-Conn.*, 56 Mass. App. Ct. at 574, quoting from *Leonard*, 423 Mass. at 155. In *W.R. Grace & Co.-Conn.*, we concluded that the plaintiff's reasonable investment-backed expectations had not been so frustrated as to constitute a regulatory taking, even though the zoning laws had been amended after the plaintiff purchased the land. *Ibid.* We held that an otherwise valid zoning change does not constitute interference with reasonable investment-backed expectations merely because it frustrates a property owner's future plans. *Ibid.* "A property owner cannot reasonably rely on an assumption that zoning will forever remain the same, and that the government will refrain indefinitely from valid changes in zoning to enhance the public interest. . . . Simply stated, a developer with designs on improving its property consistent with an existing zoning framework had best get its shovel into the ground. That the zoning change prevents the owner from exploiting the investment potential of the property to the fullest does not make it a taking." *Ibid.*

Zanghi could have built a structure on lot 36 prior to the

enactment of § 6.2.1 but did not do so. It was not reasonable for Zanghi to assume that the zoning by-laws affecting his property would never change. Zanghi retains value in the remainder of his property and has the potential to profit from cluster development. Reasonable investment-backed expectations are " 'not an all-or-nothing proposition. A government entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property.' *MacDonald, Sommer & Frates* v. *Yolo*, 477 U.S. 340, 347 (1986). That an alternative, permissible use might be less profitable is not determinative." *Daddario*, 425 Mass. at 417. Zanghi's investment-backed expectations have not been so unreasonably frustrated by § 6.2.1 as to constitute a regulatory taking.

The economic impact of § 6.2.1 on Zanghi's property is the next pre-*Lucas* factor to consider. The analysis of this factor is similar to the *Lucas* analysis whether there has been a complete deprivation of economically beneficial use. A small economic impact is insufficient to demonstrate a taking; a property owner must show that the economic impact of the governmental regulation was severe. See *Leonard*, 423 Mass. at 156; *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 694; *W.R. Grace & Co.*, 56 Mass. App. Ct. at 573. Zanghi has not shown that his economic loss was severe.

In *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 694, the plaintiffs' economic loss was not severe where the unbuildable lot in question could "still be devoted to woodland, wetland, and recreational purposes," which the court considered "beneficial uses." Moreover, the lot could be used as additional acreage for residential abutters' properties, providing the plaintiffs with potential economic benefit. *Ibid.* In *Leonard*, 423 Mass. at 156, the plaintiff's economic loss argument was based on her inability to build houses on approximately ten acres of her sixteen-acre parcel. However, she was able to build her own home on part of the land, and the entire parcel was "suitable for agricultural, horticultural, and recreational purposes." *Ibid.* The Supreme Judicial Court concluded that "[e]ven if we ignore the fact that the zoning restriction was in place prior to the plaintiff's purchase of the property, the evidence was insufficient to show that the economic impact was severe." *Ibid.*

Similarly, in this case, § 6.2.1 was not in place prior to Zanghi's purchase of the property, but the evidence is insufficient to show a severe economic impact. Zanghi has profited from building homes on other lots in the subdivision, and "[a] reduction in the number of houses that an owner may build is a diminution in value and not a taking." *FIC Homes of Blackstone, Inc.*, 41 Mass. App. Ct. at 694, quoting from *Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. at 534 n.3. Also, lot 36 can still be used for forestry, agriculture, and conservation use, as well as for cluster development with contiguous lots. Therefore, the economic impact of § 6.2.1 on Zanghi's property does not appear severe enough to constitute a regulatory taking.

Finally, the last of the pre-*Lucas* factors is the character of the governmental action. Here, since there was no physical invasion of Zanghi's property, the character of the governmental action does not indicate a taking of the property. *Id.* at 695; *W.R. Grace & Co.-Conn.*, 56 Mass. App. Ct. at 575.

4. *Conclusion.* There has been no categorical taking here because Zanghi's property has not been deprived of all economically beneficial use. In addition, under the "pre-*Lucas*" factors, there was no regulatory taking in this case because § 6.2.1 was valid as applied to Zanghi's property, Zanghi's investment-backed expectations have not been unreasonably frustrated, the economic impact of § 6.2.1 on Zanghi's property was not severe, and there was no physical invasion of the property. Therefore, the judgment of the Land Court is affirmed.

*So ordered.*