DONALD J. GRENIER & others[1] *vs.* ZONING BOARD OF APPEALS
OF CHATHAM & others.[2]

No. 02-P-319.

Barnstable. October 10, 2003. - September 17, 2004.

Present: PERRETTA, CYPHER, & DOERFER, JJ.

Further appellate review granted, 443 Mass. 1101 (2004).

*Practice, Civil,* Standing. *Zoning,* Building permit, By-law, Wetlands. *Constitutional Law,* Taking of property. *Due Process of Law,* Taking of property. *Regulation. Witness,* Expert.

Discussion of Federal law principles regarding regulatory takings. [66-68]
This court concluded that application of a town's zoning by-laws to deny a landowner a residential building permit as well as a permit to build a house and raised septic system on a parcel of land located within an area designated as a one hundred year flood plain did not constitute an unconstitutional regulatory taking, where restricting residential development within a flood plain was a direct, logical, and reasonable means of safeguarding persons and property from those hazards occasioned by a flood and advanced a substantial State interest, namely, the health, safety, and welfare of the general public as well as that of its individual members [68-69]; and where the by-laws did not deprive the landowner of all economically beneficial use of the lot, did not interfere with her reasonable investment-based expectations, and did not involve any physical invasion of the property by the government [69-71].

CIVIL ACTIONS commenced in the Superior Court Department on March 12, 1999, and July 27, 2000.

After consolidation, the cases were heard by *Richard F. Connon,* J.

*William F. Riley* for the plaintiffs.
*Bruce P. Gilmore* for the defendants.

PERRETTA, J. Having been denied a residential building permit as well as a permit to build a house and raised septic system on a parcel of land situated in Chatham, the plaintiffs sought review

[1]Ann K. Grenier and Roberta Gove.
[2]The town of Chatham and its conservation commission.

of the actions of the zoning board of appeals of Chatham (board) and the conservation commission of Chatham (commission) as well as a declaration that the defendants' actions constitute an unconstitutional taking of the property in dispute without just compensation. A Superior Court judge affirmed the decisions of the board and the commission and concluded that, on the facts found, the governmental action challenged by the plaintiffs was not a compensable taking. Based upon the judge's detailed and comprehensive findings of fact and conclusions of law and for the reasons set out below, we affirm the judgment.

1. *Background.* Gove is the present owner of a parcel of land, lot 93, situated on Seagull Road in Chatham. She acquired title to the 1.83-acre lot by devise from her mother's estate in 1975. Lot 93 is also situated in an area designated by the Federal Emergency Management Agency (FEMA) as an area within a "100-year flood plain." As defined by FEMA, a 100-year flood plain is an area subject to inundation by a base flood which, as also defined by FEMA, has a one percent or greater probability of being equaled or exceeded in any given year. More specifically, lot 93 is located within an area designated as "Zone A9, EL 10," that is, an area subject to inundation to an elevation of ten feet during a 100-year flood but not subject to wave action.

In 1985, the zoning by-law was amended to establish areas within the 100-year flood plain as an overlay conservancy district.[3] Section IV.A.4 of the zoning by-law expressly prohibits the construction of "a residential dwelling unit" within a conservancy district and, according to the defendants, does not provide for use variances. Uses allowed within the conservancy district include the cultivation and harvesting of shellfish and other marine foods, the manual harvesting of flora, outdoor recreational activities, and the use and improvement of land for agriculture. Special permits can be granted for the construction of boat houses, boat shelters, ramps, stairs, and structures used in conjunction with fishing as well as those used in connection with a marina or boatyard.

[3]Section IV.A.5.a(1) of the by-law defines a coastal conservancy district as "all the submerged lands along the coast of [Chatham], and areas subject to flooding, including . . . [a]reas delineated as the 100-year flood plain ([zone A] on the Flood Insurance Rate Maps, prepared by the National Flood Insurance Program for the Town of Chatham dated June 20, 1998)."

Because lot 93 is situated within the 100-year flood plain, it is also a protected area under the town's wetlands protection by-law. That by-law and the regulations promulgated thereunder require that persons seeking to build upon or change the characteristics of protected areas first obtain a permit from the commission. The express purpose of the wetlands by-law "is to protect the wetlands, related water resources and adjoining land . . . by controlling activities deemed . . . to have an impact or cumulative effect upon wetland values, including but not limited to . . . flood control . . . [and] storm damage prevention." Regulations promulgated pursuant to this by-law specifically noted that the depositing of materials in the flood plain so as to raise the elevation of the land, i.e., "filling," was an activity likely to cause the displacement of floodwaters to other areas of Chatham.

In July, 1998, Gove and the Greniers entered into a purchase and sale agreement for lot 93. Their agreement is contingent upon the Greniers' ability to build a single-family residence on the lot. Based upon that contingency, the Greniers applied to Chatham's department of planning and development for a permit to build a single-family residence on lot 93 and twice applied to the commission for a permit to build a single-family residence with an associated septic system.[4]

The department of planning and development denied the Greniers' application for the stated reason that the zoning by-law prohibited the construction of a residential building in a conservancy district. The denial of this application was upheld by the board on the same basis. As for their applications before the commission, the commission found that the proposed house, which was to be raised above the flood elevation level on pilings, would not interfere with the movement of floodwaters. However, it also found that the proposed septic system would lie in the flood plain and would be covered over with additional fill that the commission deemed to be "cosmetic." Based on its

---

[4]On the first application, the commission issued an order of protection pursuant to G. L. c. 131, § 40, and denied the Greniers a permit under the town's wetlands by-law. The Greniers' second application was based solely on the town's wetlands by-law and, as best as we can discern, was brought for the purpose of ensuring a basis for an appeal.

"long standing policy" of prohibiting "the *addition* of cosmetic fill to the flood plain" (emphasis added), the commission denied the Greniers' applications.[5]

Gove and the Greniers then brought an action pursuant to G. L. c. 40A, § 14, claiming that the zoning restrictions constituted a regulatory taking of lot 93, compensable under art. 10 of the Massachusetts Declaration of Rights, and the Fifth Amendment to the United States Constitution. They also brought an action in the nature of certiorari, see G. L. c. 249, § 4, seeking judicial review of the commission's denial of their request for a permit. The two actions were consolidated for trial,[6] at the conclusion of which the judge ruled that the Greniers lacked standing to argue that application of the zoning by-law constituted an unconstitutional regulatory taking.

As for Gove's claims, the judge concluded that the prohibition of residential construction set out in the zoning by-law did not constitute a compensable regulatory taking. He concluded that the zoning by-law, as applied to lot 93, was valid because the restrictions it placed on residential development in the flood plain substantially advanced a legitimate State interest that was insufficiently refuted by evidence to show that interference with Gove's economic interests amounted to a regulatory taking.

Gove and the Greniers claim that from 1975 to the present, lot 93 has been located in a district designated for residential use under the town's zoning by-law and that use of the lot for a single-family residence would ordinarily be considered a typical permissible use. They claim that the zoning by-law effects an invalid regulatory taking and that the judge's conclusion to the contrary is unsupported by law. More specifically, they argue that (1) the judge's ruling concerning the economic impact of the zoning by-law was without support in the law; (2) the uses permitted under the zoning by-law are so limited as to compel

---

[5]In its decision, the commission explained that its policy was based on a determination that the fill associated with additional individual projects would, over time, have a cumulative effect of impairing the flood plain's control characteristics. The commission also noted that, in the past, it had made exceptions to its policy to permit owners of *existing* dwellings to *replace* failed septic systems.

[6]The question of damages on the taking claim was, however, bifurcated for purposes of a jury trial.

the conclusion that its application to lot 93 constitutes a categorical taking; and (3) the commission's decision was arbitrary, capricious, and unsupported by substantial evidence.

2. *Standing to challenge the zoning by-law.* As earlier noted, the judge ruled that the Greniers lacked standing to challenge the zoning by-law on the claim that it effected an unconstitutional regulatory taking. Because the plaintiffs do not challenge this ruling as to the Greniers, we do not consider it. See Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

As for Gove, the record before us does not show that she sought and was denied a residential building permit. It might, therefore, be said that she too lacks standing on the bases of the doctrines of ripeness and exhaustion of administrative remedies. However, given the unconditional nature of the zoning by-law's prohibitions against erecting a house on lot 93 as well as the board's and the commission's opportunity to consider and apply the zoning by-law to lot 93, we conclude that the question presented, whether a single-family house can be erected on lot 93, is one of law and that any request by Gove to build on lot 93 would have been futile. See *Wilson* v. *Commonwealth*, 31 Mass. App. Ct. 757, 766-767, *S.C.*, 413 Mass. 352 (1992); *Trust Ins. Co.* v. *Commissioner of Ins.*, 48 Mass. App. Ct. 617, 623-624 (2000); *Daddario* v. *Cape Cod Commn.*, 56 Mass. App. Ct. 764, 770 (2002), cert. denied, 540 U.S. 1005 (2003).

We take up the question whether application of the zoning by-law to lot 93 effects an illegal taking. See *Lopes* v. *Peabody*, 417 Mass. 299, 305 (1994) ("[i]f the [by-law] makes a regulatory taking of [Gove's] property, the [by-law] must be declared invalid to that extent [but only to that extent] as applied to [Gove's] property"). In doing so, we accept the judge's findings of fact unless they are shown to be clearly erroneous. However, as stated in *Kendall* v. *Selvaggio*, 413 Mass. 619, 621 (1992), "the 'clearly erroneous' standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards." See *Johnson* v. *Modern Continental Constr. Co.*, 49 Mass. App. Ct. 545, 547 (2000). On that basis, we next set out the legal standards to be applied to Gove's challenge to the application of the by-law to her property.

3. *The law of regulatory takings.* Gove has failed to specify

on appeal whether her argument is based on the Fifth Amendment to the United States Constitution or art. 10 of the Massachusetts Declaration of Rights. She also has failed to make any argument that art. 10 provides greater protection than the Fifth Amendment. We, therefore, confine our review to principles of Federal law. See *Steinbergh* v. *Cambridge*, 413 Mass. 736, 738 (1992), cert. denied, 508 U.S. 909 (1993); *Greenfield Country Estates Tenants Assn., Inc.* v. *Deep*, 423 Mass. 81, 85 n.12 (1996).

It is an established principle of law that a governmental regulation which unduly burdens private property interests can amount to a taking. See *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 415-416 (1922); *Aronson* v. *Sharon*, 346 Mass. 598, 604 (1964). A regulation may effect a taking "if it fails substantially to advance a legitimate State interest or deprives a landowner of economically viable use of the land." *Greenfield Country Estates Tenants Assn.* v. *Deep*, 423 Mass. at 86, and authorities therein cited.

Because Gove has failed to cite and we have been unable to find any Federal decisional law providing a definitive explanation of the standard to be applied to the first prong of the two-prong test, whether the government's means substantially advance its ends (see *Nollan* v. *California Coastal Commn.*, 483 U.S. 825, 834-835 [1987]; *Monterey* v. *DelMonte Dunes at Monterey, Ltd.*, 526 U.S. 687, 704 [1999]), we review the record before us to determine whether the challenged regulation is a " 'logical and sufficiently well-founded approach to dealing' with the problem [before us]." *Steinbergh* v. *Cambridge*, 413 Mass. at 747, quoting from *Esposito* v. *South Carolina Coastal Council*, 939 F.2d 165, 169 (4th Cir. 1991), cert. denied, 505 U.S. 1219 (1992).

Where a regulation eliminates all beneficial economic use of the property, the courts declare a categorical taking without inquiry into any State interests advanced by the regulation so long as the regulation is not independently justified by other principles of State law. See *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1015-1016, 1029 (1992); *Steinbergh* v. *Cambridge*, 413 Mass. at 741; *Lopes* v. *Peabody*, 417 Mass. at 304-305. If, however, the regulation involves neither a physical

invasion of the property in issue nor a complete deprivation of all economic beneficial use of the land in question, we are required to consider, on a fact-specific basis, the three enumerated and "interrelated" factors set out in *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978), and quoted in *Leonard* v. *Brimfield*, 423 Mass. 152, 154, cert. denied, 519 U.S. 1028 (1996), viz., "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.' "

Gove bears the burden of showing that application of the by-law in question to her property does not substantially advance legitimate State interests and that it has deprived her land of its economically beneficial use. See *Lopes* v. *Peabody*, 417 Mass. at 307 n.13.

*4. Application of the zoning by-law to lot 93.*

a. *State interests.* We consider first whether, as concluded by the judge, the zoning by-law substantially advances legitimate State interests. As expressed in the zoning by-law, its purpose is to protect the lives, health, safety, welfare, and property of the public from the hazards of periodic flooding and to preserve and maintain the natural flood control characteristics of the flood plain as well as Chatham's ground water supply.

Although Gove concedes that the State interests identified in the by-law are legitimate, she argues that application of the by-law to lot 93 does not advance or further any of them. The thrust of her argument, as we understand it, is twofold. First, she argues that in the absence of wave or current activity, a house or septic system, equipped with flood-proof design features, will not be subject to dislocation or corruption in the event of flood and, therefore, will not pose a safety or sanitation risk. Second, she claims that the characteristics of a coastal storm flood would not be altered by construction within the flood plain.

In support of her contentions, Gove primarily relies on the judge's finding that the proposed house was not susceptible of dislocation by floodwaters, the ability to conform the building project to the requirements of other regulatory mandates, and the unrefuted opinion testimony of her expert witness concern-

ing the effect of construction upon the flood plain's flood control characteristics. Her arguments fail for the following reasons.

In the first instance, the judge was not obliged to accord the testimony of Gove's expert witness any probative value. See *Commonwealth* v. *Lunde*, 390 Mass. 42, 47 (1983), and authorities therein cited. Further, the fact that the building project might comply with other regulatory mandates enacted to advance related but distinct purposes is irrelevant to the issue before us. Gove is required to comply with all controlling and valid laws and regulations unless otherwise permitted.

More importantly, Gove fails to address in any meaningful way *all* the interests that the zoning by-law aims to protect. At trial, there was evidence to show that the presence of houses in a flood plain entails numerous safety risks. Some of those risks include the inability of relief workers to access inundated areas when roads flood, the collateral damage that could be caused by the dislocation of houses constructed in the flood plain prior to 1985, and possible collateral damage inflicted by structures associated with seaside buildings, e.g., decks, stairs, exterior fuel tanks, etc. That such risks might be unrelated to the particular features of Gove's building proposal is not a decisive consideration.

Restricting residential development within the path of floodwater, the flood plain, is a direct, logical, and reasonable means of safeguarding persons and property from those hazards occasioned by a flood and advances a substantial State interest, that is, the health, safety, and welfare of the general public as well as that of its individual members. See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 232-235 (1972), cert. denied, 409 U.S. 1108 (1973); *Turner* v. *Walpole*, 10 Mass. App. Ct. 515, 516-517 (1980). See also *Steinbergh* v. *Cambridge*, 413 Mass. at 746-747.

b. *Economic considerations and categorical takings.* Based upon his findings that lot 93 could be devoted to or sold for recreational or conservation purposes or sold to an abutter for purposes of enhancing the value of his property, the judge concluded that any economic limitations placed on Gove's

property by reason of the zoning by-law were insufficient to constitute a regulatory taking.

In contending that application of the zoning by-law to lot 93 results in a categorical taking, Gove makes no argument within the comprehension of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), concerning the applicability of *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003 (1992), to her claim. Rather, she suggests that *Gem Properties, Inc.* v. *Board of Appeals of Milton*, 341 Mass. 99, 104-105 (1960), and *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 165-166 (1960), control our analysis and that we weigh the diminution in value of lot 93 caused by application of the regulations against the State interests it serves. In light of the particular and distinguishable facts set out in *Gem* and *Jenckes* (that the challenged by-laws did little to advance any State interest and that application of the by-laws to the properties there in issue left them with little if any economic benefit) as well as more recent precedent, we conclude the question whether a categorical taking of lot 93 has occurred turns on consideration of the three factors set out in *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. at 124. See *Leonard* v. *Brimfield*, 423 Mass. at 154.

Although Chatham's by-laws restrict the manner in which Gove may use her property, they do not deprive her of all economically beneficial use of lot 93. As found by the judge, lot 93 can be devoted to recreational pursuits or sold to conservationists or abutters. Moreover, Gove's expert witness testified that lot 93 has a residual value of $23,000. Although the judge made no findings of fact concerning the market value of lot 93, we accept as matter of fact that lot 93 has a residual value of at least $23,000.[7] See *Trust Ins. Co.* v. *Commissioner of Ins.*, 48 Mass. App. Ct. at 624.

Notwithstanding evidence showing that application of the zoning by-law to lot 93 deprives Gove of the most profitable use of her property, we apply the well-established law: a land-use regulation "may deprive an owner of a beneficial property

---

[7]We also note that Gove's expert witness estimated the residual value of lot 93 without regard to any of the uses allowed under the by-law by special permit, such as the construction of boat houses, boat shelters, ramps, stairs, and structures to be used in connection with a marina or boatyard.

use — even the most beneficial such use — without rendering the regulation an unconstitutional taking." *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 19-20 (1979), and authorities therein cited, including *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. at 123-128.

Our review of the evidence also leads us to conclude that it was insufficient to show that application of the zoning by-law interfered with any reasonable investment-backed expectations harbored by Gove or that her expectations were predicated upon more than a "unilateral expectation or an abstract need." *Leonard* v. *Brimfield*, 423 Mass. at 155, citing *Ruckelshaus* v. *Monsanto Co.*, 467 U.S. 986, 1005 (1984), quoting from *Webbs Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 161 (1980). When Gove acquired lot 93, residential development was a permissible use. About ten years later, Chatham amended its zoning by-law to include the 100-year flood plain within the conservancy district. Thus, Gove held lot 93 for about a decade during which time lot 93 could have been but was not devoted to or sold for residential use. See *W.R. Grace & Co. — Conn.* v. *City Council of Cambridge*, 56 Mass. App. Ct. 559, 574 (2002); *Zanghi* v. *Board of Appeals of Bedford*, 61 Mass. App. Ct. 82, 89-90 (2004).[8]

As for the third and final factor that we are required to consider, we need say no more than that Gove's allegations concern only economic considerations rather than any physical invasion of lot 93 by the government.

Application of the law to the evidence set out in the record appendix leads us to conclude that application of the zoning by-law to lot 93 does not constitute an unconstitutional regulatory taking of Gove's property.

5. *The wetlands by-law and lot 93.* As we understand Gove's allegations, they are based on the commission's finding concerning the cumulative impact of fill in the flood plain areas. She also asserts that the commission's policy of making a distinc-

---

[8]We note that Gove acquired lot 93 by devise rather than by purchase. Because we conclude that any expectation that she might have had concerning residential construction would continue to be permitted was not reasonable, we need not consider the legal effect of any financial investment made in acquiring the property in question.

tion between existing and new dwellings is arbitrary and capricious. Because her argument fails to address in any meaningful way the commission's decisions, see note 4, *supra*, we decline to consider it. See *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 369-379 (1987); Mass.R. A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

*Judgment affirmed.*